MOISE, Justice.
John E. Jumonville appeals from a judgment of the district court rendered in favor of plaintiff, Southwest Steel Corporation, and against the defendant, John E. Jumonville, in the full sum of $5,500, with interest thereon at the rate of 4% per annum from November 11, 1948, until paid, together with an additional 10% on said principal" as attorney’s fees. He also prays that the award to him on his reconventional demand be increased from $472.50 to $5,700. - .
In answer to' the appeal, plaintiff prays' for'10% damages for a frivolous appeal: Article 907 of the Code of Practice.
On September 9, 1949,' Southwest Steel Corporation brought suit against John E.. Jumonville on two promissory notes executed by him .on November 11, 1948, each in the amount of $2,750, payable respectively in 60 and 90 days after date, to the order of the Southwest Steel Corporation, with interest at the rate of 4% per annum from date until paid, together with 10% as attorney’s fees.
The defendant filed an answer, in which he. denied the allegations of plaintiff’s.petit tion but admitted the execution of the notes in the amount sued on. Further answering, he showed that the notes were two of. a *243 series of three notes he gave plaintiff for the purchase of three LCI’s (Landing Craft-Infantry), Nos. 21, 94 and 86, for the sum of $8,250. He averred that plaintiff had been unable to furnish him with a clear and merchantable title to the vessels, and further stated, on information and belief, that other parties were claiming title to the vessels.
By way of reconventional demand, defendant claimed the sum of $3,700 for materials forming a part of the vessels in question, which he averred he purchased from plaintiff and did not receive. He also averred that he suffered damages in the sum of $2,000, representing the value of fifty tons of material lost because of a rise in the Mississippi River, contending that this loss arose out of the failure of plaintiff to deliver him a good title to the property.
Plaintiff, defendant in reconvention, filed exceptions of no cause and no right of action and a plea of estoppel to the reconventional demand, which were referred to the merits. The case proceeded to trial on the issues presented and judgment was rendered. This appeal followed.
This case involves purely a question of fact.
Southwest Steel Corporation purchased seven Landing Craft-Infantry vessels from the United States Government in 1947, and six were brought to Broussard’s Landing in 1948. Three of these vessels were sold to Patterson of New Orleans, and Nos. 21, 94 and 86 remained in the care of Nick Broussard.
Through negotiations with Lester Krieger, Vice-President of Southwest Steel Corporation, Field S. Jones purchased LCI No. 21 during August 1948. Payment of $6,000 was made with a check of Preston R. Lynn. The Act of Sale reads:
“For $6,000.00 check received we sell to Preston R. Lynn LCI No. 21 as is, where is, Plaquemine, La.”
“Lester Krieger
Southwest Steel Corporation”
Mr. Jones testified that LCI No. 21 was bought for the joint account of Mr. Lynn and himself, and that he had previously given Mr. Lynn a $3,000 cashier’s check for his share.
Mr. Krieger gave Mr. Jones the following memorandum:
“August 3, 1948
“S. Broussard
Broussards Landing
Plaquemine, La.
“Please release LCI No. 21 to Preston R. Lynn and Nos. 94 and 86 to Field S. Jones.
“Southwest Steel Corporation
Lester Krieger”
Mr. Jones and Mr. Krieger testified that Mr. Jones did not purchase LCI Nos. 94 and 86, but that they had an agreement whereby Mr. Jones was to dismantle them and receive the non-ferrous metals for his share of the work.
*245 Mr. Jones had LCI No. 21 dismantled, and the engines were shipped to Mr. Lynn in Florida. Mr. Jones further testified that Mr. Lynn owed him money, and that after selling the engines in August, 1948, Mr. Lynn released his interest to him in LCI No. 21.
Both Mr. Jones and Mr. Krieger testified that Southwest Steel Corporation reacquired its interest in LCI No. 21 within several weeks of August 3, 1948.
By notarial act dated November 11, 1948, John E. Jumonville purchased LCI’s Nos. 21, 94 and 86 — “together with any and all parts thereof that may have been dismantled and are now located on the batture of Broussard’s Landing. * * * ” He gave three promissory notes, each in the amount of $2,750, to cover the purchase price of $8,250. One note has been paid, and this suit involves the two remaining unpaid. Mr. Jumonville was given the following letter for delivery:
“Plaquemine, La.
November 11, 1948
“Memphis, Tenn.
Mr. Nick Broussard
Plaquemine
Louisiana
“Dear Sir:
“Please turn over the L.C.I. operation to John E. Jumonville.
“Yours truly •
Lester Krieger
Southwest Steel Corporation”
When Mr. Jumonville arrived at Broussard’s Landing, employees of Fields S. Jones were loading a truck with articles and material from the LCI’s. No protest was filed, but an inventory of the contents of the truck was made after contact with the sheriff. It included:
4 CO 2 bottles
1 Hose and rack
18 Port holes
4 Lengths water hose
1 Ice box
Preponderance of the testimony is to the effect that only one truck load of material and parts was removed from the vessels. Mr. Jones was not present, but the evidence discloses that immediately after Mr. Jumonville’s purchase he felt that he had some claim against Southwest Steel Corporation, and he also had an unsettled drag line bill.
Mr. Jumonville contacted Mr. Krieger, who sent him $2,300 to settle with Mr. Jones. The record contains the following notarial act and letter:
“State of Louisiana
Parish of Iberville
“Before me, the undersigned authority, personally came and appeared F. S. Jones, a single person of the age of majority, resident of Shelby County, Memphis, Tennessee, who declared that for and in consideration of Two Thousand Dollars ($2,000.-00) cash in hand paid by Southwest Steel Corporation, said Southwest Steel Corpor *247 ration being represented by J. E. Jumonville, he does hereby sell, assign, transfer, convey and deliver, with full warranty of title, all of his right, title and interest in and to the three (3) L.C.I.’s located at Broussard’s Landing in the Parish of Iberville, being L.C.L Nos. 21, 96 and 84,.to-gether with all dismantled property or parts removed from said vessels and located at Broussard’s Landing.
“Vendor, F. S. Jones, does hereby declare that there are no liens or other encumbrances bearing against the property herein transferred, except the two hereinafter mentioned and assumed by vendee.
“It is agreed and understood herein that the claim against F. S. Jones by Nick Broussard for rental is to be paid and assumed by vendee herein, Southwest Steel Corporation, and the claim of Capital City Construction Co. against vendor F,. S. Jones, in the amount of Three Hundred Sixty ($360.00) is to be assumed and paid for by Southwest Steel Corporation.
“Thus Done and Signed at Plaquemine, Louisiana, this 17th day of November, 1948, in the presence of Germaine Wilbert and W. P. Obier, competent witnesses, and me, Notary, after reading of the whole.
' “F. S. Jones
Southwest Steel Corporation
By J. E. Jumonville
“Witnesses:
Germaine Wilbert
W. P. Obier
“Wl B. Middleton, Jr.
Notary-.Public”
“Plaquemine, - La.-
November 17, 1948.
“Southwest Steel Corporation
Memphis
Tennessee
“Attention: Mr. Lester Kreiger
“Dear Lester:
“Enclosed you will find a release from FS. Jones, also a release from Clifford Jones,. Charles Jones and Jimmiepritchard. I have-personally settled the claim for Nick Broussard, and I am now mailing my check in, -the amount of $360.00 to the Capitol- City-Construction Company of Baton' Rouge, which will settle that claim. I disbursed' the $2,300.00 you wired me this date as-follows : .
$2,000.00 to F. S. Jones and $300.00 to. Capitol City- Construction. Company. ■
“F. S. Jones gave me the $60.00 owed on the $360.00 bill tó Capitol -City Construction Company.
“Hoping that this meets with your approval and I am glad that everything is ■settled:
“Yours very .truly,
J. E. Jumonville
J. E. Jumonville”
With respect to the above release, Mr-Jones testified:
“Q. Was that claim settled? A. It was.
' “Q. Through whom was the claim settled? A. He talked to Mr. Krieger *249 over the telephone and him and I agreed to a price, and the money was transferred in here, and Mr. Jumonville took me to his lawyer’s office and it was settled there.
“Q. You executed a release at that time? A. Yes, at that time, from all three vessels.
******
“Q. As far as you are concerned, you have no claim whatsoever to these three vessels? • A. That’s correct, I don’t.
“Q. And no claim to any part of the material or anything that was sold to Mr. Jumonville, is that correct? A. That’s correct.”
Mr. Jumonville took possession of the three LCI’s Nos. 21, 94 and 86, and paid the first note approximately thirty days after the purchase of the vessels on November 11, 1948. When demand was made on him for the payment of the other two notes, he wrote Mr. Krieger as follows:
“March 23, 1949
“Southwest Steel Corporation
Memphis
Tennessee
“Attention: Mr. Lester Kreger
“Dear Lester:
“I received a telegram from your attorney Mr. Robert M. Nelson, regarding the two notes past due. I am terribly sorry this has happened, but at the present time I cannot take care of them. As you know, I actually lost money on the boats, and I still have a considerable lot of scrap left. According to the scrap market today, it is impossible for me to condition and ship this scrap and come out.
“The money I owe you is an honest debt, and I promise you will get every nickel of it.
“You have been mighty nice about this matter, and I hate to ask you this, but if you will let me have some additional time I assure you that my obligation to you will be paid.
“Yours very truly,
J. E. Jumonville”
Defendant contends that he has not been furnished with a clear title to the three, vessels.
There is some testimony in the record that Mr. Lynn insinuated, by telephone conversation with Mr. Jumonville and Mr. Krieger, that he owned LCI No. 21. However, he has never made any claim of ownership against Mr. Jumonville or Southwest Steel Corporation, and he has not intervened in the present controversy. Although in answer to interrogatories Mr. Lynn stated that he was of the opinion that LCI No. 21 was destroyed in an explosion, his statement is not borne out by the remainder of the evidence. In addition, the record contains the following document signed in the presence of a notary and two-witnesses, which is equivalent to a quitclaim.
*251 “December 1, 1951
Bill of Sale
“To: F. S. Jones
Miami, Fla.
“From: Preston R. Lynn
Savannah, Ga.
“I hereby, this date, do sell, convey and transfer all of my interest in the motor vessel! L.C.I. No. 21 located at Broussard’s Landing, Plaquemine, La. This sale is made in consideration of $10.00 and other valuable considerations.
“Signed: Preston R. Lynn
Preston R. Lynn”
We, therefore, believe that John E. Jumonville received a clear and merchantable title after he settled with Mr. Jones. It was then that he paid his first note, and his actions indicate an acquiescence in the settlement.
“ * * * A person cannot accept the benefits of an act and repudiate its obligations. Succession of Monette, 26 La.Ann. 26; Theriot v. Michel, 28 La.Ann. 107; Sherer-Gillett Co. v. Bennett, 153 La. 304, 95 So. 777. * * * ” Horne v. Beattie, 167 La. 647, 120 So. 38, 39; Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656; State of Louisiana v. McIlhenny, 201 La. 78, 9 So.2d 467, 142 A.L.R. 533.
Article 2557 of the LSA-Civil Code provides:
“If the buyer is disquieted in his possession, or has just reason to fear that he shall be disquieted by an action of mortgage, or by any other claim, he may suspend the payment of the price, until the seller has restored him to quiet possession or caused the disturbance to cease, unless the seller prefer to give security.
“There is an exception to this rule, when the buyer has been informed, before the sale, of the danger of eviction.”
Article 2560 of the LSA-Civil Code further states:
“If the purchaser has paid before the disturbance of his possession, he can neither demand a restitution of the price, nor security during the suit.”
We believe that the settlement of the claim of Mr. Jones entirely quieted the possession of the defendant. We cannot see where Mr. Lynn has any interest in the matter or where he has disturbed the possession of Jumonville.
 The syllabus of the case of Kuhn v. Breard, 151 La. 546, 92 So. 52, correctly states the following principle:
“Under [LSA] Civ.Code, arts. 2557, 2560, a purchaser who has not paid the price cannot suspend such payment or sue to annul the sale, in the absence of any allegation of a disturbance of his title and possession; and of any allegation of an existing ownership in some one other than his vendor.”
*253 “It is a principle of universal jurisprudence that ‘a vendee who goes into possession cannot dispute the title of his vendor while he remains in possession.’ Herman on Estoppel, p. 809; Keating v. Wilbert, 119 La. 461, 44 So. 265.” Consolidated Progressive Oil Corp. et al. v. Standard Oil Co. of La., 158 La. 982, 105 So. 36, 37. See, Bologna Bros. v. Stephens, 206 La. 112, 18 So.2d 914.
Therefore, under the above authorities, Southwest Steel Corporation is entitled to recover on the two unpaid notes herein involved.
The amount allowed on defendant’s re-conventional demand is fair and reasonable and in line with the evidence, and we are not prone to disturb the findings of the trial judge.
Article 907 of the Code of Practice provides :
“The court, in confirming a judgment appealed from, shall compel the appellant to pay all the-costs. It may even condemn him to pay to the appellee, if the latter claims it by his answer, such damages as it may think equivalent to the loss which he has sustained by the delay consequent on the appeal, provided the amount of such damages shall not exceed ten per cent on the value of the amount in dispute.”
Relying on the above quoted article, plaintiff prays for damages for a frivolous appeal. However, defendant filed a reconventional demand and was awarded damages in the sum of $472.50, for which no credit was given him by plaintiff, and on this appeal he prays that the award be increased. Under the circumstances, there is merit to the defendant’s appeal, and an award of damages for a frivolous appeal cannot be granted. Citation of authorities is unnecessary.
For the reasons assigned, the judgment of the trial court is affirmed and the request for damages because of a frivolous appeal is denied.