# HENRY KROHNBERG AND OTHERS v. GEORGE PASS, JR. AND OTHERS.[1]

September 23, 1932.

No. 29,149.

[1]Reported in 244 N. W. 329.

74

*Meighen, Knudson & Sturtz,* for appellants.
*Frundt & Morse,* for respondents.

DIBELL, J.

Taxpayers' action to have adjudged void an agreement between the defendant school district and the defendants George Pass, Jr. and P. T. Rockey, architects; to enjoin them from performing it; and for a money judgment against the individual defendants. An application for a temporary injunction was submitted on the pleadings and affidavits and was denied. The plaintiffs appeal.

The action involves the validity of a contract of May 13, 1932, between the defendant school district and the defendant architects for their services in connection with the erection of a school build- ing. This contract refers to an earlier contract of July 5, 1930, between the same parties executed prior to the authorization of the issuance of $120,000 in bonds for the construction of the building which was contingent upon their issuance. By this first contract the architects agreed to prepare preliminary sketches, pictures, and estimates for the erection of a new school building, to be such as might be presented to the voters on the question of voting bonds, and to complete working drawings for general construction, heating, ventilating, plumbing, wiring, temperature control, and such other mechanical equipment as might be required, and to include specifica- tions upon which bids might be invited and complete the construc- tion of the building. They agreed "to employ Rose & Harris, Me- chanical Engineers of Minneapolis, Minn., to lay out the plans and specifications for the heating and plumbing and other mechanical equipment used in the building"; and to assist "in getting bids and awarding contracts for the execution of the work." They were to have for their services five per cent of the cost of the building.

Bonds in the amount of $120,000 were authorized at an election held November 20, 1930. The election was sustained in In re Special Election, 183 Minn. 542, 237 N. W. 412. At an election

held April 1, 1932, the issuance of the bonds was rescinded. See Independent Sch. Dist. No. 68 v. Rosenow, 185 Minn. 261, 240 N. W. 649. On April 19, 1932, the voters at a special election authorized the issuance of bonds in the amount of $60,000. Then the contract of May 13, 1932, was executed. The school building was to cost $80,000. The achitects were to receive $4,000; and for the work which they did under the contract of July 5, 1930, they were to have $2,040.

■ It is provided by G. S. 1923 (1 Mason, 1927) §§ 2846-2847, as follows:

"2846. No contract for work or labor, or for the purchase of furniture, fixtures, or other property, or for the construction or repair of school houses, the estimated cost or value of which shall exceed five hundred dollars ($500.00), shall be made by the school board of any common or independent school district without first advertising for bids or proposals in some newspaper of the county by two (2) weeks' published notice in the city or village located nearest to the school district in which such contracts are proposed to be let, or some newspaper published in the county seat in such county. Such notice shall state the time and place of awarding the contract, and contain a brief description of the work to be performed, materials to be furnished or building to be constructed or repaired.

"2847. Every such contract shall be awarded to the lowest responsible bidder, shall be duly executed in writing, and the person to whom the same is awarded shall give a sufficient bond to the board for its faithful performance, and otherwise conditioned as required by sections 4535, 4536, 4537 and 4538, Revised Laws, 1905, as amended. If no satisfactory bid is received, the board may readvertise. Every contract made without compliance with the provisions of this act shall be void; provided, that in case of the destruction of buildings or injury thereto, where the public interests would suffer by delay, contracts for repairs may be made without advertising for bids."

The claim of the plaintiffs is that the contract with the defendant architects was within the statute quoted and was invalid because entered into without a letting to the lowest bidder after a published advertisement for bids.

The work of the architects was preliminary to construction, some of it preliminary to advertising for bids, and it continued throughout the construction. It was technical and professional in character, and the services were in their nature personal. The authorities, although there is a division of opinion, generally hold that such services are not within a statute requiring competitive bids. Rollins v. City of Salem, 251 Mass, 468, 146 N. E. 795; Stratton v. Allegheny County, 245 Pa. 519, 91 A. 894; State v. Brown, 159 Tenn. 591, 21 S. W. (2d) 721; Stephens County v. J. N. McCammon, Inc. (Tex. Com. App.) 40 S. W. (2d) 67. Contracts for plans and specifications are not within such statutes. Cress v. State, 198 Ind. 323, 152 N. E. 822; Franklin v. Horton, 97 N. J. L. 25, 116 A. 176. Other cases upon the general doctrine are found in 44 C. J. p. 102, § 2188; 2 Dillon, Mun. Corp. (5 ed.) § 802; 3 McQuillin, Mun. Corp. (2 ed.) § 1292; 44 A. L. R. 1143, note, p. 1153. The rule is stated in 2 Dillon, Mun. Corp. (5 ed.) § 802:

"Scientific knowledge or professional skill has  *  *  *  been regarded as furnishing a ground for an exception to the statutory rule. Thus it has been said that the services of a lawyer, of a physician, or of an architect or surveyor, are not embraced within a provision requiring the letting of contracts to the lowest bidder."

The case of First Nat. Bank v. County of Cook, 146 Minn. 103, 177 N. W. 1013, in principle accords with this view. There the services were in the nature of those of a broker or agent employed to procure a purchaser for county bonds. A decision contrary to the rule we follow, involving the services of architects, is Johnson-Olmsted Realty Co. v. City and County of Denver, 89 Colo. 250, 1 P. (2d) 928.

■ The plaintiffs urge that the employment of designated engineers by the architects was invalid, for one reason because there was no advertisement for bids, and for another because they were

employed by the architects in accordance with their contract with the school district and not directly by the school district. By the contract of July 5, 1930, the architects agreed to employ Rose & Harris, mechanical engineers of Minneapolis, Minnesota, to lay out the plans and specifications for the heating, plumbing, and other mechanical equipment used in the building. The contract of May 13, 1932, in effect provided that the architects should prepare a new set of plans in accordance with the previous contract and supervise the erection of the building upon the same terms. It contemplated that they would hire the designated engineers as they undertook to do in the first contract. Their work was similar to that of the architects in that it was professional and personal. The school district wanted these particular engineers. Why is not material. There is nothing affecting the validity of the contract in the fact that they were employed by the architects in accordance with demands of the contract instead of directly by the school district.

■ It is objected that there should have been a letting of the work of the superintendent of construction after advertisement for bids for such work.

The superintendent of construction was a personal representative of the school district. He watched the contractors to see that the work was done in accordance with the plans and specifications of the architects and engineers. It was not the intention of the statute that for such services there should be a public advertising for bids and a letting of the contract of employment to the lowest responsible bidder as is the requirement for the letting of a contract for work or labor, or for the purchase of furniture, fixtures, or other property, or the construction of the building. The cases support this view. Hibbs v. Arensberg, 276 Pa. 24, 119 A. 727; Hunter v. Whiteaker (Tex. Civ. App.) 230 S. W. 1096.

■ The architects did work under the contract of July 5, 1930, after the election of November 20, 1930, authorizing the issuance of $120,000 in bonds, and before the election of April 1, 1932, rescinding the issuance of the bonds authorized by the former election. On May 13, 1932, the architects and the school district en-

tered into a contract which recited that the architects after the voting of the $120,000 bonds on November 20, 1930, had "done a substantial amount of work on plans for a building which cannot now be built due to the fact that the owner has rescinded the bond vote of November 20, 1930." The architects were then authorized to prepare a new set of plans for an $80,000 building, and the school district agreed to pay $2,040 for the work before done and $4,000 for the work to be done on the building to be constructed upon the authorization of $60,000 in bonds on April 19, 1932. The payment of this sum of $2,040 was somewhat by way of settlement or compromise. It fairly appears that the defendants may have been liable in contract or in quasi contract. See Olsen v. Ind. and Cons. Sch. Dist. No. 50, 175 Minn. 201, 220 N. W. 606. There is nothing in the contract for payment calling for injunctive relief. It may be that the architects drove a good bargain; but that is not a question here.

Order affirmed.

