PONDER, Justice.
 

 The Attorney General, having been instructed by the Governor, under authority of Act No. 73 of 1926, brought this suit in the name of the Louisiana State Board of Education, the State of Louisiana, and the Louisiana Crime 'Commission, created by Act No. 13 of 1940, against E.
 
 Á.
 
 Mcllhenny and Richard W. Leche, in solido, asking to have a certain contract entered into between E. A. Mcllhenny and the Louisiana State Board of Education declared null and void ab initio and to recover the sum of $27,351.01, previously paid E. A. Mcllhenny under the provisions of the contract, together with interest and costs. The plaintiffs filed a supplemental petition, asking for an attachment to issue against the property of the defendant Leche, sufficient to discharge and satisfy the claim, which was excepted to on various grounds.
 

 The defendant Leche interposed the following exceptions to the petition: (1) Want of jurisdiction based on the ground that his domicile was in St. Tammany Parish and not in the Parish of Iberia where these proceedings were instituted; (2) lack of interest in plaintiffs to prosecute the action; (3) want or lack of capacity of the plaintiffs to prosecute the action and stand in judgment, especially want of capacity in the Attorney General to prosecute the action in the name of the State of Louisiana under authority of Act No. 73 of 1926, and the want of capacity of the Louisiana Crime Commission, sought to be created by Act No. 13 of 1940, to prosecute the action in the name of the State; and (4) misjoindert of parties plaintiffs. He also filed a plea attacking the constitutionality of Act No. 13 of 1940.
 

 The defendant Mcllhenny filed the following exceptions: (1) Estoppel; (2) no right or cause of action; (3) lack of interest in the parties plaintiffs; (4) want of capacity of the parties plaintiffs; and (5) misjoinder of the parties plaintiffs. He also attacked the constitutionality of Act No. 13 of 1940.
 

 It is alleged in the petition that the defendant Mcllhenny is a resident of Iberia Parish and the defendant Leche is a resident of St. Tammany Parish; that the defendants are justly and truly indebted to the petitioners in the full sums of $4,281.46, $14,829.71, and $8,239.84, with legal interest thereon until paid; that the defendants unknown to plaintiffs concocted and devised a scheme and conspiracy to defraud, obtain money and property by means of various and fraudulent pretenses, representations and promises from the State of Louisiana, the State Board of Education, and the taxpayers ' of the State, set out as follows: that the defendants were close personal friends; that Mcllhenny was engaged in the business of operating a nursery and Leche was’the Governor of the State; that Leche acting on behalf of himself and Mcllhenny did convene the Board of Liquida
 
 *83
 
 tion of the State Debt, urging the need of additional funds in the building fund in the State Treasury for the maintenance and improvement of the educational and other institutions of the State, which fund is apportioned by the Governor; he would thereby obtain the action of the Board, transferring funds out of the general fund of the State into the State building fund, to be apportioned by Leche as Governor to various charitable and correctional institutions, in the sum of $48,236.56; and he would fraudulently withhold from the Board information as to his intention to allocate the sum for landscaping purposes at , Southwestern Louisiana Institute and Southeastern Louisiana College; that it was part of the scheme that Leche, on behalf of himself and Mcllhenny, would cause a representative to appear before the State Board of Education and urge upon the Board the importance of landscape work on the grounds of certain educational institutions, with the intent to defraud, persuade and influence the members of the Board to employ Mcllhenny to do the landscaping, furnish the necessary labor and material; that it was part of the scheme that Leche would create in the minds of the members of the Board the impression that such funds as he had in his power to make available for the landscaping work would not be available unless Mcllhenny was employed to do t*he work; that it was part of the scheme that the defendants would cause the State Planning Commission to circularize the heads of all of the various educational institutions, under the control of the Board of Education, informing them of the interest of Leche, the Governor, in landscaping the grounds of the institutions, of his desire that the work be made uniform throughout the State, and to that end, his desire that they cooperate in the employment of Mcllhenny; that it was part of the scheme that the impression be created in the minds of the heads of these institutions that their cooperation with the defendants in securing the services of Mcllhenny was necessary in order to obtain the allocations from Leche for their respective institutions for carrying out any landscaping program; that it was part of the scheme that these letters should be followed up by other letters from Mcllhenny, urging his employment and stating that it was the Governor’s thought that in order to get the best possible results from, the money to be expended and to have the landscape planting of the State done under a general plan, using plants especially adapted to the State, that it would be wise to have Mcllhenny’s organization do the work; that Mcllhenny when employed should not be bound by any rigid contract, requiring performance according to any exact terms or plans, but should be given unlimited latitude in the plans adopted, in the plants to be used, their size, number and spacing, and in the prices to be charged for them, thereby permitting gross overcharges for labor, engineering and supervision and permitting the substitution of plant material smaller in size than commonly used on such projects, of inferior grade and quality, at exorbitant prices, with resulting unconscionable profits to Mcllhenny and Leche; that in pursuance to this scheme, any contract entered into between Mcllhenny and the Board of Edu
 
 *85
 
 cation or other educational institution should he entered into without advertising for competitive bids, without any definite plans, without bond, without definite contract prices, and without the requirement of supervision by any agent or representative of the Board or institution; that in pursuance of this scheme, Leche, acting for himself and Mcllhenny, convened the Board of Liquidation of the State Debt and fraudulently advocated the necessity of transferring $48,236.56 from the general fund to the building fund, concealing from the other members of the Board his intention to allocate this sum for landscaping work on the campuses of Southwestern Louisiana Institute and Southeastern Louisiana College; he secured the action of the Board in making the transfer for the fraudulent purpose of making funds, available for carrying out the scheme and furnished the funds out of which the defendants might cheat, wrong and defraud the State, the State Board of Education and the taxpayers; that thereafter, in pursuance of the scheme, Leche allocated $49,-546 to Southwestern Louisiana Institute, and $28,105 to Southeastern Louisiana College, and made presently • available for the works, $38,000 for Southwestern Louisiana Institute and $7,736.56 for Southeastern Louisiana College, for landscaping the grounds of these institutions; that Mcllhenny and Leche had the chairman of the Planning Commission to circularize the heads of the various State educational institutions under the control of the Board of Education, together with the Board, on or about September 26, 1930, and immediately thereafter the defendants followed up the circular letters with letters from themselves urging Mcllhenny’s employment; that Leche acting for himself and Mcllhenny had a representative appear before the Board of Education on March 14, 1939, who urged the Board to begin a landscaping program at Southwestern Louisiana Institute and Southeastern Louisiana College; this representative stated that Leche had made available large sums for the beautification of the campuses of these institutions from the general fund which so allocated would be turned over to the presidents of the institutions, all of which statements were caused to be made by Leche in the furtherance of the conspiracy and with the view of influencing the Board to accept the allocation ; that on March 25, 1939, the Board of Education executed a contract with Mcllhenny, a copy of which is attached and made a part hereof for the purpose of showing rem ipsam; that notwithstanding the contract contemplated the immediate expenditure of public funds belonging to the State in excess of $500, it was let, without advertisement calling for bids, in contravention of a prohibitory law; that no plans and specifications covering the labor, services and material were ever drawn and prepared as a basis of the contract, prior to its execution or since; that no bond was required nor given to guarantee the execution of the contract and no express contract price was mentioned therein; that no time limit for its execution was provided for, and no supervision by any agent or representative of the Board was required; that no extreme public emergency existed with reference to the subject matter of the contract
 
 *87
 
 nor was same necessary in the maintenance of any public works built and completed; that notwithstanding the absolute nullity of the contract, Mcllhenny fraudulently induced and persuaded the president of Southeastern Louisiana College to execute a check to him on July 6, 1939, in the sum of $4,281.46 and fraudulently induced the president of Southwestern Louisiana Institute to execute two checks to him, one on June 1, 1939, calling for the sum of $14,829.71, and another on June 12, 1939, Calling for $8,239.84, all of which checks were cashed by Mcllhenny; that the receipt of these sums of money by the defendants under the circumstances constituted a gross fraud upon the State, the Board of Education, and the taxpayers, and the receipt of such sums by the defendants constitutes the basis of this. suit for the return of the money, illegally had and received; and that the contract is null and void ab initio for the reason that the contract is contrary to public policy, is contra bonos mores, and in contravention of an express prohibitory law. The plaintiffs pray for judgment decreeing the contract null and void ab initio and for judgment against the defendants, in solido, for the sum of $27,351.01, interest, and general relief.
 

 Counsel for the plaintiffs, appellants, concedes that the Crime Commission is without the power to sue, since the Act creating it, Act No. 13 of 1940, has already been held unconstitutional in this, respect by the Supreme Court. Counsel for the plaintiffs also concedes that if it is found that the exception of no cause of action urged on behalf of Mcllhenny was properly sustained by the lower court, then, in such event, the plea to the jurisdiction urged by Leche is well founded.
 

 Counsel for the appellants contends that the contract on which this suit was founded was null and void ab initio for the reason that the contract was not advertised and let to the lowest bidder, as required by Act No. 73 of 1926, and for the further reason that the contract was not executed in accordance with the other terms of the Act.
 

 In the title of Act Nq. 73 of 1926, as amended by Act No. 190 of 1928, by Act No. 20 of the Fourth Extra Session of 1935, and by Act No. 127 of 1940, it is declared. to be “relative to the proper letting of contracts for the purchase of materials or supplies, or the doing of public work by the parochial, municipal and other public corporations and political sub-divisions of the State; providing the method of letting such contracts”, etc.
 

 The contract involved herein provides that Mcllhenny shall furnish all material and labor for the landscaping work and planting in accordance with plans and specifications of the architects, and that the landscaping and planting shall be performed in accordance with the report and recommendations of Mcllhenny to be approved by the architect. It required the entire work to be completed within 255 working days from the date of the contract. Mcllhenny was to be paid monthly for the percentage of work completed, less 10% withheld for final payment, which final payment would be paid 45 days after the completion and acceptance of the work. The contract was signed by the president
 
 *89
 
 of the Board of Education on behalf of the Board and by E. A. Mcllhenny.
 

 It is apparent, from a reading of the contract, that Mcllhenny was employed as a landscape architect and was to furnish the labor and materials necessary to perform the landscaping.
 

 Webster’s New International Dictionary, 2nd Edition, Unabridged, in defining “Architect” states that “it is also one who plans and constructs .landscape work.” Webster also defines “Landscape Architect” as “one whose profession is to so arrange and modify the effects of natural scenery over a given tract as to- produce the best aesthetic effect, considering the use to which the tract is to be put.” Webster defines “Landscape” as follows: “to make a landscape of; to improve by landscape architecture or gardening.”
 

 “It is generally held that statutes requiring competitive bidding or public advertisement before awarding public contracts do not contemplate that contracts for architectural services should be awarded on such a basis, such contracts being for personal services of a professional character, and calling for technical skill and experience of a high degree.” 6 Corpus Juris Secundum, Architects, § 6(b), pp. 300, 301.
 

 “The statute requiring competitive bidding has been construed not to apply to contracts for services which depend for their value on scientific knowledge and personal skill, or for supplies of a peculiar character, depending for their value upon the personal skill of the manufacturer, or where an inspection and test are required.” 44 Corpus Juris, Section 2188, Municipal Corporations, Page 102.
 

 “Contracts for professional services, such as the service of physicians or attorneys, and contracts for services requiring special skill or .training, are not required to be let on bids under a statutory or constitutional provision that contracts with a state or municipality must not be entered into without first advertising for bids.” 44 A.L.R. 1150.
 

 “To hold that the act would require that the services of a man belonging to a profession such as that of the law, of medicine, of teaching, civil engineering, or architecture should be obtained by a' county only through competitive bidding would give a ridiculous meaning to the act, and require an absurdity. * * * Such a construction would require the selection of attorneys, physicians, school teachers, and civil engineers by competitive bids, the only test being the lowest bid for the services of such men. Such a test would probably be the best that could be conceived for obtaining the services of the least competent man, and would be most disastrous to the material interests of a county.” Hunter et al. v. Whiteaker & Washington, Tex.Civ.App., 230 S.W. 1096, 1098.
 

 “An architect is an artist. His work requires taste, skill, and' technical learning, ability of a high and rare kind. Advertising might bring many bids, but it is beyond peradventure that the lowest bidder would be least capable and most inexperienced and absolutely unacceptable. As well advertise for a lawyer or civil engineer for the city and intrust its vast af
 
 *91
 
 fairs and important interests to the one who would work for the least money.” Miller v. Boyle, 43 Cal.App. 39, 184 P. 421, 423. Also see Stephens County v. J. N. McCammon, Inc., 122 Tex. 148, 52 S.W.2d 53.
 

 “It was not the intention of the statute that for such services there should be a public advertising for bids and a letting of the contract of employment to the lowest responsible bidder, as is the requirement for the letting of a contract for work or labor, or for the purchase of furniture, fixtures, or other property, or the construction of the building.” Krohnberg et al. v. Pass et al., 187 Minn. 73, 244 N.W. 329, 331.
 

 . “Contracts calling exclusively for the personal employment of attorneys, physicians, architects, and other persons, because of their peculiar scientific knowledge or professional skill, ability, training or efficiency, are held not to be within the contemplation of the statute requiring the .awarding of contracts through competitive bids. * * * The theory upon which the doctrine rests is that the competitive bidding statutes cannot be rationally or practically applied to contracts for the employment of architects or other persons whose services are required because of the special training, skill, and scientific or technical knowledge necessary to the object to be accomplished through that employment. The value of such services is not to be measured by a mere matching of dollars, so to speak; it'is not to be determined upon the irrational assumption that all men in the particular class are equally endowed with technical or professional skill, knowledge, training, and efficiency, nor are such services rendered more desirable because offered more cheaply in a competitive bidding contest. The selection of a person to perform services requiring those attributes calls for the exercise of a wise and unhampered discretion in one seeking such services, for it involves not only those attributes, but the qualities of reputation and personal and professional trustworthiness and responsibility as well. The services of the person'selected cannot be squared to, nor his accomplishment circumscribed by nor forced and expanded to fill, specific measurements, as in cases of contracts for construction, where the service is to be performed and may be required to be done by accurately ascertainable and designated standards, with specific materials, and in accordance with prescribed plans and minutely detailed specifications; the nature and mode of performance of the services to be done in the employment under the excepted contract are such as to be determinable largely by the professional or scientific person so employed. His performance and accomplishment thereunder must depend also entirely upon his own initiative, skill, knowledge, training, experience, and discretion, free from the interference or dictation of the employer as to the methods, systems, processes, or theories to be used in effecting the ultimate object of the employment. Obviously, it would be absurd to construe the statute to mean that contracts for such services shall be let only to the lowest bidder in a competitive bidding contest.” Gulf Bitulithic Co.
 
 *93
 
 v. Nueces County, Tex.Civ.App., 297 S.W. 747, 753, rehearing denied.
 

 Moreover, if the present contract was such that it came under the provisions of this Act, the fact that the services were rendered and the work done, accepted and paid for, would operate as an estoppel to the plaintiffs’ claim.
 

 In the case of Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656, 657, 658, wherein Act No. 73 of 1926, as amended by Act No. 20 of the Fourth Extra Session of 1935, was under • consideration with reference to the mandatory provision requiring contracts with public bodies to be in writing, this Court stated:
 

 "Even if the statute relied upon by defendant School Board required a written contract, the fact that the work was done, the contract completed and executed, and part of the price paid operates as an estoppel of defendant from raising that question.
 

 "It is an equitable maxim of our Civil Code that ‘no one ought to enrich himself at the expense of another.’ R.C.C. Art. 1965.
 

 “ ‘Neither law, equity, nor good conscience will allow one to claim the benefits and at the same time escape the obligations of an undertaking. Willoughby v. Fidelity [& D.] Co., 16 Okl. 546, 85 P. 713, 7 L.R.A.,N.S., 548, and notes, 8 Ann.Cas. 603.’ Sherer-Gillett Co. v. Bennett, 153 La. 304, 309, 95 So. 777, 779.
 

 “ ‘A person cannot accept the benefits of an act and repudiate its obligations. Succession of Monette, 26 La.Ann. 26; Theriot v. Michel, 28 La.Ann. 107; Sherer-Gillett Co. v. Bennett, 153 La. 304, 95 So. 777.’ Horne V. Beattie, 167 La. 647, 120 So. 38, 39.
 

 “In Powell v. Factors’ & Traders’ Ins., Co., 28 La.Ann. 19, Syllabus, it is said:
 

 “ ‘Defendants cannot accept the fruits of a contract and allege its invalidity for a breach thereof known at the time of such acceptance of the fruits.’
 

 “56 Corpus Juris, 44, Par. 536, Schools and School Districts, states the law as follows: .
 

 “ ‘Although it has been said that the contract may be either oral or written, statutes in some jurisdictions provide that the contract be in writing, in which case anything not in writing is not a contract, although where the contract is within the power of the school authorities executing it, and so performed that to refuse to fully execute would operate as a fraud and result in a situation for which there is no compensation, the contract is enforceable.’
 

 “And at page 515, Par. 584, it is said:
 

 “ ‘Where the district has received and appropriated the benefits of a contract it had the power to make, it will be estopped from asserting the invalidity of the contract on the ground of a defect in its execution or other irregularity in the exercise of the power.’
 

 “In Busch-Everett Co. v. Vivian Oil Co., 128 La. 886, 887, 55 So. 564, it is said in the syllabus by the Court:
 

 “ ‘Where, a party to a contract has obtained all the benefits he intended to obtain .
 
 *95
 
 from such contract, he cannot subsequently be heard to urge that the contract is void, because it contains a potestative condition, and thus defeat the rights of the party who has performed his part of the contract.’
 

 “It is expressly provided in the third paragraph of Article 2272 of the Revised Civil Code that:
 

 “ ‘The confirmation, ratification, or voluntary execution in due form, and at the period fixed by law, involves a renunciation of the means and exceptions that might be opposed to the act, without prejudice, however, to the right of persons not parties to it.’ ”
 

 It will be seen that the doctrine of estoppel was applied in the Burk case, supra, where a mandatory provision of the statute, was violated. This would be equally true with reference to violations of other mandatory provisions of the statute.
 

 Our conclusion therefore is that the Act does not apply to contracts of the nature involved herein, but even if the Act were applicable, the plaintiffs would be estopped from raising the question.
 

 The allegations of the petition which attempt to impute fraud and deceit to Mcllhenny appear to consist more or less of the conclusions of the pleaders without any allegation of fact upon which to base, such conclusions. It is not alleged, nor suggested, in the petition that Mcllhenny was over paid in any manner for the services he rendered or the work done under the contract. Neither is it alleged that any damage resulted from the alleged conspiracy. If the plaintiffs had alleged facts showing a conspiracy, this action could not be maintained for the reason that there is no allegation of any damages resulting therefrom. It is well settled that unless actual damage has resulted from something done in the furtherance of the object of the conspiracy that no civil action will lie.
 

 “It is not essential to criminal liability for conspiracy that the object of the conspiracy should have been accomplished. Civil liability rests on different grounds, however, and, unless actual damage has resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy, no civil action lies against anyone; but, if a conspiracy is conceived and executed, and a private injury results, the one so injured has a right of action against the conspirators.” 15 Corpus Juris Secundum, Conspiracy, § 6, pp. 1000, 1001.
 

 “Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof — the damage — not the conspiracy or the combination. * * * The essential elements, whether of a criminal or ‘civil’ conspiracy, are the same, ex.cept that to sustain a civil action for conspiracy. special damages must be proved.”
 
 *97
 
 11 Am.Jur., “Conspiracy,” Sec. 45, Pages 577, '578.
 

 “A conspiracy does not of itself give rise to a right of action. It does so only in so far as it causes injury. It is the injury that is the ground of the action.” Levy v. Collins, 115 La. 204, 212, 38 So. 966, 969.
 

 “But the well-settled rule is that no civil action lies for a conspiracy unless there be an overt act that results in damage to the plaintiff.” Nalle v. Oyster, 230 U.S. 165, 33 S.Ct. 1043, 1048, 57 L.Ed. 1439.
 

 “The essence of conspiracy is an agreement — together with an overt act — to do an ' unlawful act, or a lawful act in an unlawful manner.” Cooper v. O’Connor, 69 App.D.C. 100, 99 F.2d 135, 142, 143, 118 A. L.R. 1440, writ of certiorari denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414.
 

 We therefore conclude that the exceptions of no cause and no right of action were properly sustained by the lower court, and the plaintiffs’ suit should be dismissed. The plaintiffs concede that if the exceptions of no cause and no right of action are well founded that the plea to the jurisdiction filed by Leche should also be sustained. This position is correct, for the reason that the court would have jurisdiction only by virtue of the fact that the defendants were liable in solido as joint tort feasors. Since the suit has been dismissed as to Mcllhenny, who resides in the jurisdiction of the court, the court-could have no jurisdiction over Leche, who resided out of its jurisdiction.
 

 The defendant Leche has answered the appeal, asking for the judgment to be amended so as to specifically dissolve the illegal attachment against his property with the reservation of his rights to claim all damages suffered by him therefrom, and to the further extent of maintaining the exception to the citation issued to him under the plaintiffs’ supplemental petition. He also asks that the judgment as amended be affirmed. The plaintiffs concede in their brief that the dismissal of the plaintiffs’ suit has the effect of dissolving the writ of attachment.
 

 Having arrived at the conclusion that the plaintiffs’ suit should be dismissed for the reason that the exceptions of no cause and no right of action and the plea to the jurisdiction are well founded, it is not necessary to pass on the other exceptions and pleas to the main demand. However, the defendant Leche is entitled to have the attachment specifically dissolved, and his exception to the citation sustained, with reservation of any right that he might have to a claim for damages.
 

 For the reasons assigned, the judgment of the lower court dismissing the plaintiffs’ suit is amended by ordering the attachment dissolved, reserving to the defendant Richard W. Leche any rights that he might have to any claim for damages resulting therefrom, and by sustaining the exception to the citation. As thus amended, the judgment is affirmed.