FOSS, Appellant v. SPITZNAGEL et al., Respondents

(97 N.W.2d 856)

(File No. 9762. Opinion filed July 23, 1959)

**James O. Berdahl,** Sioux Falls, for Plaintiff and Appellant.

**Stordahl, May & Boe,** Sioux Falls, for Harold Spitznagel.

**Robert S. Golden, John E. Burke,** Sioux Falls for Fay Wheeldon, Bert T. Yeager, and John Browning, as Mayor and Commissioners of the City of Sioux Falls.

**Claude A. Hamilton** and **Thomas J. Barron,** Sioux Falls for Fay Wheeldon, Bert T. Yeager, and John Browning, Individually.

BIEGELMEIER, J. The amended complaint in this action states that the plaintiff was a taxpayer of Sioux Falls, South Dakota; that he brought the action for and on behalf of himself and all other taxpayers; that three of the defendants were the city commissioners thereof and as such had control of a fund known as the "Auditorium Building Fund", which fund was created by Ch. 488 of the South Dakota Session Laws of 1953; that by a resolution of May 9, 1955, said defendants employed the defendant Harold Spitznagel and Associates (which defendant we will refer to herein as Spitznagel) as architects for a prospective new civic arena or auditorium; that by city auditor's warrant the commissioners on March 5, 1957, paid defendant Spitznagel $10,859.32 for such architect's services out of this Auditorium Building Fund; that at an election on June 12, 1956, the question of issuing bonds of $2,500,000 for such a building was submitted to the voters which failed to receive the required 60% affirmative vote; that the employment of defendant Spitznagel was made without first advertising for bids for such services; that this payment was illegal and wholly unauthorized by law; that as a result of said employment without advertising for competitive bids thereon, the plaintiff and all the taxpayers in said city of Sioux Falls similarly situated have been damaged in the sum of $10,859.32 for which amount plaintiff asked judgment against all the defendants. The defendants moved to dismiss the amended complaint for the reason that it failed "to state a claim upon which relief can be granted". SDC 33.1002. At the hearing on this motion the trial court entered one order of dismissal dismissing plaintiff's amended complaint cn the merits as against the defendant Spitznagel and a separate

order of dismissal dismissing the amended complaint upon its merits and with prejudice as against the defendant commissioners; these orders were dated April 10, 1958. The settled record shows that on April 30, 1958, the trial court also entered a Judgment which dismissed the amended complaint on its merits as against all defendants and awarded costs to them. On October 29, 1958, the plaintiff served and filed a notice of appeal to this court from these two orders and the judgment. We have set out this record in detail for the reason that defendants have moved to dismiss plaintiff's appeal, claiming that the notice of appeal was not served or filed within sixty days after written notice of the filing of these orders.

SDC Supp. 33.0702 states that an appeal must be taken to the Supreme Court within sixty days after written notice of the filing of the order shall have been given to the party appealing and every other appeal allowed must be taken within six months after the judgment shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party. SDC 33.1702 provides in part: "An order becomes complete and effective as such when reduced to writing, signed by the Court or Judge, attested by the clerk and filed in his office." A careful examination of the settled record shows that the order of dismissal as to the defendant Spitznagel was signed by the judge, attested by the clerk and filed, but it does not show that the notice of entry thereof was ever served on plaintiff's attorneys so that the plaintiff's time for appeal had not expired from that order when he served his notice of appeal. The settled record further shows that while the notice of entry of the order of dismissal as to the defendant commissioners was served on plaintiff's attorney, this order was signed by the judge but not attested by the clerk. An order not having been attested by the clerk is not effective as an order. Stephens v. Faus, 20 S.D. 367, 106 N.W. 56, 58. Section 317 of the Revised Code of Civil Procedure of 1903, under which that case was decided, was the same as SDC 33.1702, supra, except the clause "when reduced to writing" was "made in writing" and this court said after referring to this section 317: "It affirmatively appears from the ap-

pellant's abstract that the order denying his motion for a new trial was not attested when this appeal was taken. No such order then existed. An appeal cannot lie from an order which does not exist, * * *." Such has been the holding of this court in many succeeding cases, including Brady v. Cooper, 46 S.D. 419, 193 N.W. 246, where the wording of § 2561, Rev.Code 1919 was the same as SDC 33.1702. So this order did not exist and notice of entry of the nonexisting order was ineffective. The appellant therefore has timely appealed from the one order and from the judgment. In Northwestern Engineering Co. v. Ellerman, 69 S.D. 397, 10 N.W.2d 879, this court held that the order sustaining the motion to dismiss the action with prejudice to another action and that the defendants have judgment thereon with leave to the plaintiff to amend its amended complaint within twenty days was not a judgment but an intermediate order under subdivision (6) of SDC 33.0701. As the present appeal includes an appeal from the Judgment we are permitted under SDC 33.0710 to review any order, ruling or determination of the trial court whether it is made before or after judgment involving the merits and necessarily affecting the judgment and appearing upon the record and thus review the one effective order and judgment which reach the same result, the dismissal of the action. The same question being presented, the appeal is not bad for duplicity. City of Sioux Falls v. Mansors, 41 S.D. 105, 168 N.W. 751; Grieves v. Danaher, 60 S.D. 120, 243 N.W. 916. The motion to dismiss the plaintiff's appeal is therefore denied. We thus reach the merits of this appeal.

Plaintiff contends that the contract employing defendant Spitznagel is embraced within the provisions of Ch. 439 of the Session Laws of 1955 and on this premise argues that the payment under the contract was illegal. This chapter amended SDC Supp. 65.0701-2 and so far as pertinent here reads:

> "All contracts of any public corporation, whether for the construction of public improvements or contracts for the purchase of materials, supplies or equipment, when such contracts, involve an expenditure equal to or in excess of one thousand

dollars, must be let to the lowest responsible bidder."

SDC Supp. 65.0701-3 amended by this same chapter provides for publication of an advertisement for bids prior to the opening thereof. In support of this view plaintiff cites Sioux Falls Taxpayers Association v. City of Sioux Falls, 69 S.D. 93, 7 N.W.2d 136. In that case involving work of repairing a water tank, this court considered these statutes which were of like wording except for the amount. That portion of Sec. 10 of Ch. 300 of the 1939 Session Laws quoted in the last cited opinion also remains unchanged and now appears as SDC Supp. 65.0704-1: "It shall be unlawful for any public corporation or its officers to enter into any contract in violation of the terms of this act, and any such contract entered into shall be null and void and of no force and effect."

While the statutes involved in the several states hereafter referred to may differ in their wording from our own or from each other, they all have the general requirement that before a public contract can be entered into, a notice must be given by advertisement and that the letting must be made to the lowest bidder. In Miller v. Boyle, 43 Cal.App. 39, 184 P. 421, 423, the court said:

"The claim of respondent that the contract between the board of public works, and the petitioner, should only have been awarded after compliance with the provisions of the charter, relative to letting contracts to the lowest bidder, has been disposed of adversely to his contention. The same cases also seem to establish that the board of public works, in employing a duly authorized architect, and upon the terms and conditions prevailing in the community, were adopting reasonable and suitable means, these decisions holding that the engagment of an architect to prepare plans and otherwise render services in connection with the erection of city buildings on a percentage basis is not in violation of the provisions of municipal charters requiring a written contract with the low-

est and best bidders. 'The reasonableness of such construction,' said the court in one of these cases, 'is most strikingly illustrated in the present case. An architect is an artist. His work requires taste, skill, and technical learning, ability of a high and rare kind. Advertising might bring many bids, but it is beyond peradventure that the lowest bidder would be the least capable and most inexperienced and absolutely unacceptable. As well advertise for a lawyer or civil engineer for the city, and intrust its vast affairs and important interests to the one who would work for the least money.' "

For comment approving this construction and the later legislative acceptance of it, see Cobb v. Pasadena City Board of Education, 134 Cal. App. 93, 285 P.2d 41. In Stephens County v. J. N. McCammon, Inc., 122 Tex. 148, 52 S.W.2d 53, 55, with reference to a contract entered into by a county commissioners court employing an architect to prepare plans and specifications for a courthouse the court said:

"The contract called for skill and experience on the part of the appellees. They were required to prepare suitable plans for the work to be done in the construction of a jail and perhaps a new courthouse. The county was vitally interested in procuring the services of a skilled and experienced person or concern to draw up the necessary plans and supervise the work while going on. To hold that contracts for this kind of work must be let to the lowest bidder would inevitably result in the county being placed in a position which would require it to accept the services of incompetent persons. Naturally one who has no skill, experience, or technical knowledge, could underbid one who possesses the skill, technical knowledge, and experience, to perform this kind of service. In other words, to construe the statute as contended for would place a premium upon incompetency and produce an unfortunate situation. To illustrate, could it be seriously contended that, if a county

desired the services of a skilled and competent attorney to represent the county in some important piece of litigation, involving a large sum of money, that the county should, before letting the contract, submit it to competitive bids, and then be required to hire the person making the lowest bid therefor? We think not. To do and perform the work for which appellee was employed required technical skill and experience of a high degree, and it is plain that the legislature never intended that such services should be awarded upon competitive bids."

See also Jeffersontown v. Cassin, 267 Ky. 568, 102 S.W.2d 1001; Krognberg v. Pass, 187 Minn. 73, 244 N.W. 329; Annotation 44 A.L.R. 1153; 142 A.L.R. 533 and note; 63 C.J.S. Municipal Corporations § 1148, note 40, p. 815; 43 Am.Jur., Public Works and Contracts, § 28; City and County of San Francisco v. Boyd, 17 Cal.2d 606, 110 P.2d 1036 (civil engineer for traffic study); Hordin v. City of Cleveland, 77 Ohio App. 491, 62 N.E.2d 889 (advertising solicitors); in the Spring 1959 issue of the Syracuse Law Review, Vol. 10 page 272, the distinction is recognized. In McQuillin on Municipal Corporations, 3d Ed. Vol. 10, § 29.35, it is stated:

"Although they are sometimes held to apply to such an agreement, provisions requiring competitive bidding as a basis for entering into contractual relations with a governmental body usually are held not to apply to contracts for personal services involving peculiar skill or ability. Provisions as to competitive bidding have been held not to apply to contracts for the services of a court stenographer, attorney at law, auditor, car advertising specialist, consulting and supervising engineer, or a superintendent or architect to supervise and make suggestions relative to work let under competitive bidding. And generally the requirement does not apply to the employment of a professional man, in which case the authorities have a discretion as to his qualifications."

The author cites many cases in accord and the only apparent exception cited in the notes is the case of Johnson-

Olmstead Realty Co. v. County of Denver, 1931, 89 Colo. 250, 1 P.2d 928. In 1954 the Supreme Court of Colorado had the same question presented in McNichols v. City and County of Denver, 130 Colo. 202, 274 P.2d 317, 319 and considered the rule it had pronounced earlier under charter provisions of the city requiring "All contracts for local improvements, and all other contracts involving expenditures under the direction of the board, * * * shall be let to the lowest·reliable and responsible bidder, after public advertisement by the board for not less than ten days in some newspaper of general circulation, published in the city and county. Any other mode of letting such contracts shall be illegal and void" and whether this applied to professional services of an architect. The court in its opinion said:

"Since the question is before us and since it appears that Colorado, under some wording of the two cases just mentioned, stands alone, while other jurisdictions, by cases that are impressive, hold that a municipality, such as is here involved, can contract for the services of an architect without complying with the charter as here involved, which it seems was intended to control the letting of contracts for the construction of local improvements, we accept and adopt the majority rule."

After reviewing its earlier decisions the court continued:

"Thus we see that the cases are distinguishable, and it is not here necessary to specifically overrule these cases; however, as to those who are unable to make the distinction, we now say that anything said in those cases that may be construed to be a holding that the charter provision is applicable to a contract for architectural services, is overruled, and we accept with complete approval the decisions of other jurisdictions, including California, Indiana, Massachusetts, Minnesota, New York, North Dakota, Ohio, Pennsylvania and Texas holding that a municipality can contract for the services of an architect without complying with such a requirement as is contained in the charter section in the present case."

■ It is our holding that SDC Supp. 65.0701-3 as amended by Ch. 439 of the 1955 Session Laws, does not include contracts for architects services and that the employment of defendant Spitznagel was not a violation thereof.

Plaintiff did not cite SDC Supp. 45.1501 or SDC Supp. 45.1508 which relate solely to contracts by municipalities for the construction and repair of public buildings and other public works and require, with other sections, similar advertising and letting to the lowest bidder for municipal contracts and declare violations unlawful and the contracts made in violation thereof null and void. As we shall later indicate, the services performed by architects are part of the construction of a building, and this being so, upon the sound reasoning in the above opinions these last cited statutes are held not to embrace or apply to architects services and the contract involved in the present action is not a violation of these provisions. Professional services such as are involved in the case at bar are easily distinguishable from the purchases of gravel which were held proscribed by the governing statutes in Fonder v. South Sioux Falls, 76 S.D. 31, 71 N.W.2d 618, 53 A.L.R.2d 493.

Plaintiff after quoting Ch. 488 of the 1953 Session Laws argues that "This statute does not authorize the city commission to pay architect's fees for plans for a building which it is not authorized to build." He concedes in his brief that "Plans and specifications for public improvements are as much a part of same as any other part of the construction work." Part of Ch. 488, supra, is as follows:

"Any county, municipality or school district operating or maintaining, either jointly or severally, an auditorium, coliseum, public gymnasium or public community house, shall have the power to establish a fund and may collect for such fund a sum not exceeding 10% of the admission charge paid by each person, * * *The money derived shall be kept separate from all other funds of the governmental subdivision and shall be known as the 'Auditorium Building Fund', and shall not be used for any other purpose except the erection or re-

modeling of an auditorium, coliseum, public gymnasium, or public community house, and for the acquisition of sites and equipment therefor. * * *

"The governing body may use the moneys in the 'Auditorium Building Fund' with any other funds that may come into its possession for the erection, construction or remodeling of an auditorium, coliseum, public gymnasium or public community house, and for the acquisition of sites and equipment therefor."

In Harlinger Independent School District v. C. H. Page & Bro., Tex.Com.App., 48 S.W.2d 983, at page 986, cited by plaintiff, the court said:

"Of course, the school board has general powers to contract for the building of schoolhouses and expend bond funds therefor. This power would carry with it the right to employ architects to design and supervise the construction of such buildings."

McQuillin, Municipal Corporations, 2d Ed., § 384 and 3d Ed., § 2905, states the rule:

"A city having the general power to build markets is authorized to employ an architect to prepare plans and specifications for their construction."

In Tackett v. Middleton, Tex.Com. App., 280 S.W. 563, 565, 44 A.L.R. 1143, the court after stating that the employment of an architect by municipal authorities was not controlled by statutes requiring bids in writing, quoting from an earlier decision said:

"The fees paid the architect for the preparation of plans and specifications may properly be regarded as a part of the general expense of constructing the buildings; but the contract for the payment of such fees may, as in this case, be entirely distinct from the contract for the erection of the building, and its validity in no way depends upon the validity of the building contract."

■ ■ Referring to sections of the Texas Constitution, Vernon's Ann.St.Const. art. 11, §§ 5, 7, which prohibit the creation of a debt by a municipal corporation unless at the time of its creation a tax be levied to provide a fund to pay the interest and a sinking fund for the payment of the debt at maturity, the court then said:

"These constitutional provisions * * * have no application, however, to that class of pecuniary obligations, in good faith intended to be, and lawfully, payable out of either the current revenues for the year of the contract **or any other fund within the immediate control of the corporation.**" (Emphasis supplied.)

Plaintiff does not complain that the money in the Auditorium Fund was insufficient to pay defendant Spitznagel's claim or that he was paid from some other fund of the city as plaintiff states in his complaint that Spitznagel was paid the $10,859.32 "out of said Auditorium Building Fund", the fund created by Ch. 488. Whether there was any further money in this fund does not appear; the Board of Commissioners thought there was sufficient to employ architects to start plans for such auditorium. Whether this decision was wise or whether it should have been contingent on the construction of the building or the approval of some bond issue is for the Board of Commissioners. They are answerable for their actions to their constituents. This court cannot control their decisions when they act within their powers. It is for them to determine policy and exercise their judgment and discretion within legal limitations. In Robbins v. Rapid City, 71 S.D. 171, 23 N.W.2d 144, 147, this court said:

"The Constitution and statutes of this state invest municipal corporations with certain powers; they have no powers other than those so granted and such as are incidental thereto. Where specific powers are so conferred a municipal corporation is vested with discretion as to the method of exercising such powers unless the method of such exercise is prescribed or limited by the Constitution or by legislative enactments."

In 38 Am.Jur., Municipal Corporations, § 499, it is stated:

> "It has been said that if a contract is within the power of a municipal corporation, and has been duly entered into, the courts can consider only whether the constitution permits the contract in question; questions of whether the contract is wise or whether its terms are advantageous for the corporation and the public are solely for the municipal officers."

While it was referring to charter provisions limiting the powers of the municipality, the court in City and County of San Francisco v. Boyd, supra, said [117 Cal.2d 606, 110 P.2d 1041]:

> "Notwithstanding the limitation prescribed by the quoted section, petitioners have broad powers as the lawmaking body to contract on behalf of the city and county. Their powers are extensive in all strictly municipal matters. * * * To promise the payment of money upon the performance of a contract out of an unincumbered and unexpended fund admittedly set aside for such expenditure is not to contract a liability in violation of the charter. * * *Because the scheme might fail of execution for want of appropriation is immaterial."

The money in the Auditorium Building Fund having been legally expended for architect's services for preparation of the plans and specifications for such a building, the judgment and order appealed from are affirmed.

All the Judges concur.