**Deanna G. SANDERSON and Norgrin Sanderson, Plaintiffs and Appellees,**

v.

**CITY OF MOBRIDGE, A South Dakota Municipal Corporation, Defendant and Appellant.**

**No. 13382.**

Supreme Court of South Dakota.

Argued Oct. 28, 1981.

Decided March 31, 1982.

Rehearing Denied May 7, 1982.

Russell H. Battey of Williams & Gellhaus, Aberdeen, for plaintiffs and appellees.

A. N. Buckmeier of Bormann, Buckmeier & Bormann, Mobridge, for defendant and appellant; Clark J. Bormann of Bormann, Buckmeier & Bormann, Mobridge, on the brief.

FOSHEIM, Justice.

Deanna and Norgrin Sanderson, appellees, own a house in Mobridge, South Dakota, which they wish to move to their current place of residence, Aberdeen, South Dakota. Mobridge City Ordinance ch. 9.04 requires that the Sandersons obtain a permit from the City of Mobridge (City), appellant, before their house can be moved over the streets of Mobridge. The Sandersons applied to the City for a moving permit but it was denied. The Sandersons brought an action in circuit court to compel the City to issue the moving permit. A trial to the court was held, subsequent to which the circuit court granted the Sandersons a moving permit. The City appeals from the Judgment of the circuit court. We reverse.

■ The City's denial of appellees' permit application was not an ultra vires act as "moving buildings across or along a city street is not an ordinary use of the street, and the privilege of so using the streets cannot be claimed as a matter of right .... [S]uch use of the streets not being a matter of right, the governing body has some discretion in regard to when a permit shall be issued." *Evans v. King*, 57 S.D. 109, 230 N.W. 848, 849 (1930). The circuit court's scope of review is thus limited to whether the City's refusal to grant the permit "was unreasonable and arbitrary or was justified in the exercise of reasonable discretion." *Id.* Such a standard is mandated by the separation of powers doctrine which this court has long recognized governs judicial review of municipal actions. *City of Mobridge v. Brown*, 39 S.D. 270, 164 N.W. 94 (1917); *See Foss v. Spitznagel*, 77 S.D. 633, 97 N.W.2d 856 (1959); *Ericksen v. City of Sioux Falls*, 70 S.D. 40, 14 N.W.2d 89 (1944).

■ The trial court's findings list the seven grounds relied on by the City to support their decision not to grant the permit. The City's reasons for denial focus on the destruction of the aesthetic value of the area occasioned by the removal or disfigurement of trees along the moving route. We believe such refusal grounds are reasonable and reflect a real and commendable concern for the aesthetic preservation of Mobridge. The trial court obviously did not agree with the City concerning the number of trees which would have to be removed and the extent of harm the trimming would cause. But such disagreement does not suffice to condemn the City's decision as arbitrary.

The trial court's conclusion that the City abused its discretion and arbitrarily refused to grant the permit is therefore not supported by its findings which list the reasons relied on by the City to deny the permit. The decision of the trial court is accordingly reversed.

Other issues raised are unnecessary to decide in view of the decision reached.

WOLLMAN, C. J., and MORGAN, J., concur.

DUNN and HENDERSON, JJ., dissent.

HENDERSON, Justice (dissenting).

I would affirm the judgment of the trial court. As in all cases, an adequate recitation of the facts is vital so that the reader has a balanced view of competing theories and can thus appreciate why a dissent foments in the mind of the dissenter.

FACTUAL BACKGROUND

Appellees purchased a home in Mobridge for approximately $38,000 in 1978. In March of 1979, appellees attempted to sell their home as appellee Norgrin Sanderson had assumed an employment position in Aberdeen. Appellee Norgrin Sanderson testified that approximately $28,000 worth of redecorating and remodeling was done on the home during the time he and his wife had lived there. The home was listed with local realtors but several months passed and no offers were made. Consequently, appellees decided to move their home from Mobridge to Aberdeen for the express purpose of reestablishing their family residence.

Pursuant to the applicable city ordinances, appellees applied to the City in May of 1980 for a permit to move their home. A fee was tendered and a bond posted by appellees. On June 17, 1980, the Mobridge City Council met and denied appellees' application for the following reasons:

(1) It will cause the destruction of several trees along the boulevard in front of the house.

(2) It will cause the destruction of several trees in the city park which is not in the best interest of the City.

(3) It will cause excessive trimming of branches on trees along the proposed route of removal, which will be detrimental to the trees.

(4) The removal of trees in the city park and on the boulevard in front of the house to be removed, will destroy the aesthetics of the site and area.

(5) That the street or streets selected are not wide enough to permit removal of the building without great damage to the

trees along the street and will destroy the aesthetic value of the area.

(6) That the streets may be damaged from the weight of the building to be removed.

(7) Application does not select a route which is feasible as stated.

City Ordinance # 555, section 5, provides: "The City Council and Superintendent of Parks shall have the authority and jurisdiction of regulating the planting, maintenance and removal of trees on streets and other publicly-owned property to insure safety or preserve the aesthetics of such public sites." Any failure to comply with the provisions of this ordinance would subject the offender to a fine and/or imprisonment.

The home in question is forty feet wide, fifty and one-half feet long, and twenty-six feet high. These dimensions do not include a library that is presently attached to the home but which would be detached and moved separately. Appellees commenced this suit after being denied a permit to move their home.

## ISSUES PRESENTED

Under the proof submitted in this case, did the trial court commit reversible error by granting appellees a permit to move their home? I would hold that it did not. Did the City abuse its discretion and arbitrarily refuse appellees a permit to move their home? I would hold that it did.

## ANALYSIS

### A.

First, the City argues that the trial court erroneously failed to consider appellees' alleged poor faith effort in selling their home. The City points out that appellees were asking $105,000 for their home, yet they paid only $38,000 for it and made $28,000 worth of improvements, thus creating a $39,000 mark-up. Appellees had the house listed with two local realtors for approximately eight months, during which time they received no offers.

Such a contention is irrelevant inasmuch as the ordinances pertaining to permit applications do not require a good-faith effort to sell a home prior to moving it. The City conceded this point in oral argument. Therefore, this contention is without merit.

### B.

The City secondly contends that the trial court erred when it considered the house moving permits previously issued by the City. In Finding of Fact XI(7), the trial court stated "[t]hat at no time heretofore had the Mobridge City Council denied a moving permit due to the apparent necessity of the removal or trimming of trees." The City maintains that the other permits are irrelevant, immaterial and have no probative value since all but one were issued prior to the enactment of City Ordinance # 555. I do not agree.

It was the duty of the trial court to determine from the evidence if the City Council acted arbitrarily and abused its discretion when it denied appellees' permit application. Before making this determination, the trial court obviously deemed it necessary to review the City Council's previous actions regarding these type of applications. The evidence which the City would foreclose from consideration is pertinent as to whether a reasonable discretion in denying the permit was exercised by the City. Under the mandates of SDCL 19–16–2(2),[1] the evidence was relevant.

### C.

Third, the City contends that the trial court erred in not recognizing a change in appellees' facts from the time of filing their application for a permit to the time of trial. Specifically, the City alleges that appellees' hired mover, James Herman, stated at the city council meeting that five trees would

---

1. SDCL 19–16–2(2) states:

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence.

have to be totally removed and extensive trimming would be required on other trees in order to move the home. At trial, Herman testified that only three trees would have to be removed (one of which was dead) and extensive trimming would not be required.

Assuming arguendo that the court below failed to recognize this discrepancy, under the particulars of this case, I do not consider such an evidentiary disparity as rising to the level of prejudicial error. *See State Highway Commission v. Beets*, 88 S.D. 536, 224 N.W.2d 567 (1974).

### D.

The City advocates that the trial court should be reversed and the denial of appellees' request for a permit be reinstated due to several factors which are hereinafter enumerated. Initially, however, I refer to the following quote from *Evans v. King*, 57 S.D. 109, 110–111, 230 N.W. 848, 849 (1930):

Moving buildings across or along a city street is not an ordinary use of the street, and the privilege of so using the streets cannot be claimed as a matter of right, 44 C.J. 1038, *City of Eureka v. Wilson*, 15 Utah, 53, 48 P. 41; *Edison El. L. & P. Co. v. Blomquist* (C.C.) 185 F. 615. In a small city or town where the streets are not crowded by traffic to any great extent, the use of the streets for moving buildings may be properly exercised under reasonable regulations, and to totally forbid such use in such communities may well be deemed unreasonable, and in a proper case the city authorities may be compelled by mandamus to issue a permit for the moving of buildings across or along the streets in such places. But such use of the streets not being a matter of right, the governing body has some discretion in regard to when a permit shall be issued. The answer in the instant case alleges that the plaintiff's building cannot be moved across or over the streets without damaging sidewalks and cutting down trees planted by the city in the parking, and not only would it cause damage to the property of the city, but would destroy the electric light wires and equipment, and impair the service of light and power. The [trial] court refused to permit any evidence in support of these allegations, apparently on the theory that plaintiff had an absolute right to the use of the streets for the purpose of moving his buildings over and along them. In this we think the [trial] court erred. It may be that the refusal to issue a permit was arbitrary and not warranted in the exercise of a reasonable discretion, but that was a matter to be established by proof if it existed, and the refusal to admit any evidence in support of the answer prevents any finding as to whether the refusal was unreasonable and arbitrary or was justified in the exercise of a reasonable discretion.

The pertinent inquiry, then, must be whether the trial court erroneously ruled that the City abused its discretion and arbitrarily refused to grant appellees a permit. In the exercise of its discretion, the City must have acted reasonably.[2] Likewise germane is the oft-quoted precedent of this Court that the trial court's findings of fact shall not be overturned unless they are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

Appellants have, essentially, requested this Court to make its own independent decision as to whether the City acted arbitrarily. Shockingly, the majority opinion has acceded to the request! A cardinal rule pertaining to the scope of review by the Supreme Court, established for decades, has been thrown to the wind. The function of this Court on appeal is not to determine the weight or credibility of the testimony nor whether it would have made the same

---

2. The majority opinion refers to *Foss v. Spitznagel*, supra, which expressly states that a city's board of commissioners can "exercise their judgment and discretion *within legal limitations*." *Id.* 77 S.D. at 644, 97 N.W.2d at 862 (emphasis mine). *Ericksen v. City of Sioux Falls*, supra, and *City of Mobridge v. Brown*, supra, both cited by the majority opinion, contain similar qualifying language.

or similar fact determination; rather, our function is to determine whether or not there is evidence from which the trial court could properly draw its conclusions. *See First Northwestern Trust Co. of South Dakota v. Family Homes, Inc.*, 303 N.W.2d 352 (S.D.1981); *Estate of Podgursky*, 271 N.W.2d 52 (S.D.1978); *Larson v. Syverson*, 84 S.D. 31, 166 N.W.2d 424 (1969). Here, the trial court entered eleven findings of fact, with explicit subparagraphs, and five conclusions of law, all of which would be a credit to any good trial judge.

Those factors, alleged by the City, indicating that appellees' permit was properly denied include:

(1) The City's duty to protect its property (streets, trees, parks and other aesthetic considerations) as indicated by SDCL 9–29–1, SDCL 9–30–2, and SDCL 9–38–2.[3] The rationale behind these statutes is reflected in 56 Am.Jur.2d, Municipal Corporations, § 437 (1971):

> It is well settled that the possession and enjoyment of all private rights are subject to a reasonable exercise of municipal police power[.] . . . Where the interest of the individual conflicts with the interest of society, such individual interest is subordinated to the general welfare, and a citizen cannot acquire a vested right of exemption from a reasonable and proper exercise of municipal power for the protection of the public health, safety, and general welfare.

\*     \*     \*     \*     \*     \*

There is no question as to the authority of a municipality, invested by its charter or by general statute with power to preserve the peace and health, to restrict the use of private property in the interest of the public, provided that the restriction is reasonable.

(2) City Ordinance # 555 (quoted supra), effective August 22, 1976, which, the City maintains, inherently gives it the right to deny applications for moving permits if the move would necessitate tree removal and cause aesthetic damage. The City points out that twelve of the thirteen previously issued moving permits were issued prior to the enactment of City Ordinance # 555, and the one permit which was issued after the ordinance's enactment did not entail destruction of any City trees.

(3) Evidence at the city council meeting revealing that the permit should be denied. First, mover Herman testified at the meeting that five trees would have to be removed along the proposed route, plus trimming of other trees. Also, the fact that one of the council members had a draft of the denial of the permit prior to the council meeting did not affect the other members' votes since they knew nothing about the premature draft. Furthermore, the size of the home, combined with the width of the streets along the tree-lined proposed route, make it aesthetically unfeasible to grant the permit.

I am not persuaded by the significance of these facts. Rather, I believe that several other pertinent points support the trial court's ruling; they are as follows:

(1) According to city finance officer Darleen Zahn, the city council had never previ-

---

**3.** [SDCL 9–29–1] Every municipality shall have power to exercise jurisdiction for all authorized purposes over all territory within the corporate limits and over any public ground or park belonging to the municipality, whether within or without the corporate limits, and in and over all places, except within the corporate limits of another municipality, within one mile of the corporate limits or of any public ground or park belonging to the municipality outside the corporate limits, for the purpose of promoting health, safety, morals, and general welfare of the community, and of enforcing its ordinances and resolutions relating thereto.

[SDCL 9–30–2] Every municipality shall have power to regulate the use of sidewalks, streets, alleys, wharves, parks, and public grounds, to provide for cleaning the same, to prevent and remove obstructions and encroachments upon the same, to prevent injury to the same, to regulate or prevent any practice having a tendency to annoy persons frequenting the same, and to regulate or prohibit structures under sidewalks and riding and driving thereon.

[SDCL 9–38–2] Every municipality shall have power to plant and provide for the care and preservation of trees upon public grounds and along the streets and to inclose any public ground.

ously denied a permit to move a home upon the basis that trees would necessarily be trimmed or removed.

(2) The council's lack of direct or indirect investigation into the feasibility of the move (aside from the testimony of mover Herman who was present at the council meeting at appellees' request). Councilman Dale Myren, however, did visually inspect the home and route, as did councilman Andrew Jackson who "stepped-off" the width of the streets along the proposed route. Subsequent to the council meeting, city engineer Bruce Pier took measurements of appellees' home and also of the streets along the proposed route. The results of Pier's measurements were not available to the council members when appellees' permit application was denied. The City produced no evidence to support its statement that the route was not feasible; to the contrary, appellees produced evidence that the selected route was the most feasible.

(3) No evidence of any possible damage to the City's streets was presented at the council meeting or at trial. This is a crucial fact. Mover Herman testified at trial that the weight of the home would not cause any damage to the streets of the City.

(4) The relevancy of City Ordinance # 555 is questionable in determining if the City abused its discretion since the ordinance was not listed by the city council as a reason for denying appellees' application.

(5) Destruction of trees in the city park will not occur. Furthermore, the trimming of branches along the proposed route will cause no harm if professionally done.

(6) "Generally an owner of property is entitled to use it as he sees fit and any ordinances which seek to inhibit its free use are strictly construed. Well-founded doubts as to the meaning and scope of restrictive ordinances should be resolved in favor of the free use of property." *Breckweg v. Knochenmus & May*, 81 S.D. 244, 254, 133 N.W.2d 860, 866 (1965).

Acting with an abundance of caution and prudence, the trial court specifically provided in its judgment that appellees, at their cost, must replace any removed trees to the satisfaction of the City; also, that the City was to be reimbursed for any resulting public property damage caused by the move; further, any trimming of trees was to be performed by a professional tree trimmer.

Granted, the Mobridge City Council has the power to deny these types of permits; that power, however, is not free and unrestrained from judicial intervention. The trial court did not err in overruling the City's denial of appellees' permit application.

I am authorized to state that Justice DUNN joins in this dissent.