THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WAYNE DAVIS, Defendant-Appellant.

First District (2nd Division)   No. 81—2444

Opinion filed May 10, 1983.

James J. Doherty, Public Defender, of Chicago (Robert D. Glick, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Denise O'Malley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

In a jury trial, defendant, Wayne Davis, was found guilty of rape, deviate sexual assault, armed robbery and unlawful restraint. The trial court held that the deviate sexual assault conviction merged into the rape conviction and sentenced defendant to serve 30 years in the Illinois Department of Corrections for rape and 20 years for armed robbery, the sentences to run concurrently[1] On appeal, defendant contends that he was deprived of his statutory right to a speedy trial and his constitutional right to counsel of his own choice. For the reasons which follow, we reverse defendant's convictions and remand the cause for a new trial.

I

Defendant first contends that he was denied his statutory right to a speedy trial. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5.) The speedy trial statute provides that every person in custody for an alleged offense shall be tried within 120 days from the date he was taken into custody unless delay is occasioned by the defendant. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a).) Any delay occasioned by the

---

[1]The mittimus reflects that defendant also received concurrent 30-year sentences for both deviate sexual assault and unlawful restraint. No sentence for unlawful restraint appears in the transcript of the sentencing hearing.

defendant temporarily tolls, for the time of the delay, the 120-day period within which defendant must be tried. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(f); *People v. Williams* (1981), 94 Ill. App. 3d 241, 247, 418 N.E.2d 840.) No other delay, whether caused by the State or by the court, will toll the running of the statutory period. *People v. Neideffer* (1975), 25 Ill. App. 3d 819, 822, 324 N.E.2d 46.

The record discloses that defendant was arrested on June 23, 1980, for offenses which were alleged to have taken place on June 12, 1980. Defendant was indicted on July 2, 1980 (indictment No. 80—4507) and, on July 15, 1980, his case was assigned to Judge Thomas J. Maloney for trial. Six days later, on July 21, 1980, defendant filed a motion for substitution of judges (Ill. Rev. Stat. 1979, ch. 38, par. 114—5(a)), which Judge Maloney denied on August 12, 1980.

Defendant's speedy-trial argument focuses on the 237-day period from August 12, 1980, the date on which Judge Maloney denied defendant's motion for substitution, to April 6, 1981, when, pursuant to a supervisory order issued by the Illinois Supreme Court on March 26, 1981, Judge Maloney transferred defendant's case to Judge Arthur J. Cieslik.[2] Defendant contends that Judge Maloney erred in denying his motion for substitution and that, as a result, all of Judge Maloney's subsequent actions in the case, including the continuances he granted, were void. Defendant submits that if the continuances were unauthorized, then none of the delays during this 237-day period properly may be attributed to him. We cannot agree.

Where a motion for substitution of judges is filed within 10 days after the case has been placed on the judge's trial call, the right to substitution is absolute. (Ill. Rev. Stat. 1979, ch. 38, par. 114—5(a); *People v. Peter* (1973), 55 Ill. 2d 443, 458, 303 N.E.2d 398.) Upon the filing of a motion which is in compliance with the statute, the trial judge loses all power and authority over the case except to make the necessary orders to effectuate the substitution, and denial of the motion constitutes reversible error. (*People v. McGlothen* (1962), 26 Ill. 2d 392, 394, 186 N.E.2d 319; *People v. Kostos* (1961), 21 Ill. 2d 451, 455, 173 N.E.2d 469.) If a substitution motion is erroneously denied, all proceedings subsequent to the order of denial are void. (*People v. Thomas* (1978), 58 Ill. App. 3d 460, 463, 374 N.E.2d 795; *People v. Ethridge* (1966), 78 Ill. App. 2d 299, 304, 223 N.E.2d 437.) In our

---

[2]Since the filing of a motion for substitution of judges temporarily suspends the 120-day period (*People v. McClure* (1979), 75 Ill. App. 3d 566, 570-71, 394 N.E.2d 833), defendant has not added to this 237-day period the 22 days between July 21, 1980, the date on which the substitution motion was filed, and August 12, 1980, when the motion was denied.

judgment, it is unnecessary to decide whether Judge Maloney improperly denied defendant's motion for substitution on August 12, 1980, because it is clear from our examination of the record that defendant was not ready for trial before any judge between August 12, 1980, and April 6, 1981.

In determining whether the 120-day period has been tolled, the proper test is whether an act of defendant in fact caused or contributed to the delay. (*People v. Shields* (1974), 58 Ill. 2d 202, 204, 317 N.E.2d 529.) Furthermore, "[a] reviewing court must carefully examine the surrounding facts and circumstances to prevent a mockery of justice either by technical evasion of the right to a speedy trial by the State, or by discharge of a defendant by a delay in fact caused by him." *People v. Bevis* (1980), 89 Ill. App. 3d 344, 346, 411 N.E.2d 1123.

In the instant case, Judge Maloney charged defendant with virtually all of the continuances which he granted between August 12, 1980, and April 6, 1981, because defense counsel repeatedly stated that they were not ready for trial. Although counsel did object to charging defendant with several of these continuances on the ground that defendant was not properly in Judge Maloney's courtroom, they never informed Judge Maloney that defendant was prepared immediately to proceed to trial before another judge. Nothing in this record supports defendant's argument that the delay in bringing him to trial was caused by the denial of his motion for substitution of judges. Rather, the delay occurred because defendant was not ready for trial. Thus, since defendant's own lack of preparedness prevented his being tried at an earlier date, we conclude that his right to a speedy trial was not violated.

## II

■ Defendant next contends that he was denied his constitutional right to counsel of his own choice when Judge Cieslik removed Judith Halprin as his counsel and appointed the public defender in her place. The following facts are pertinent to our analysis of this issue.

Shortly after July 15, 1980, defendant's family retained Rick Halprin and Judith Halprin to represent him. On April 7, 1981, Judith Halprin moved to withdraw as counsel because she had not received her fee.[3] Judge Cieslik denied this motion but appointed Halprin to represent defendant because she had been serving as his counsel for the previous nine months.

---

[3]Because of an illness, Rick Halprin was not able to represent defendant at trial.

Prior to trial, Halprin persisted in rearguing motions on which Judge Cieslik had already ruled. When Judge Cieslik threatened to hold her in contempt if she continued with this conduct, Halprin accused him of "intimidating" her. Before the parties began selecting a jury on July 15, 1981, Judge Cieslik denied Halprin's motion for leave to question prospective jurors during *voir dire*. During jury selection, Halprin repeatedly renewed her motion, stating that the judge's questioning of the prospective jurors did not permit her to evaluate properly their qualifications to serve as jurors.

Judge Cieslik admonished Halprin to make no references which would "pollute this jury" and ordered her to raise only in sidebar discussions matters which did not concern the jury. Halprin then moved to withdraw as counsel because of "intimidation." The court denied this motion. When Halprin continued to complain of her inability under the circumstances to select jurors, Judge Cieslik warned her that if she made one more similar comment in front of the jury he would declare a mistrial and hold her in contempt. After the next two jurors were tendered to her, Halprin said, "Then with our apologies to the jury based on our necessarily limited information, [defendant] will excuse Mr. Keane and Mr. Weinstein." Judge Cieslik excused the two jurors, immediately called a conference in his chambers and cited Halprin for contempt because she had ignored his repeated warnings. Thereupon the case was continued to the following day, July 16, 1981, at which time Judge Cieslik stated that he was granting Halprin's earlier motion to withdraw and removed her as defendant's attorney. The court then fined Halprin $1,000 for contempt of court. In imposing this punishment, Judge Cieslik commented that Halprin had breached her duty to the court on several occasions and that he had endured "much abuse" from her.

Judge Cieslik again informed Halprin that he was removing her from the case. Halprin objected on the ground that her motion to withdraw was not a "standing request" but had been made only in response to the court's earlier rulings. When Halprin disclaimed any intention of requesting leave to withdraw, Judge Cieslik replied that he was going to remove her because she not "competent enough" and did not have "enough experience" to conduct herself properly and to provide defendant with an adequate defense. Although Halprin argued that only the defendant could terminate the attorney-client relationship, Judge Cieslik responded that since he had appointed Halprin, he had the authority to remove her once he determined that she could not "properly defend this defendant, ***." Judge Cieslik informed defendant that he had removed Halprin and was appointing the public

defender in her place. Defendant acknowledged that he understood the court's actions and did not offer any objections. Judge Cieslik then declared a mistrial and continued the case to August 25, 1981.

On August 25, 1981, defendant asked Judge Cieslik to reappoint Halprin because the public defender did not have the "best intentions in my case." Judge Cieslik denied this request, stating that the court had appointed her and had "the right to revoke that appointment at any time it sees fit because of the conduct of the attorney." Defendant replied that if the court would not reappoint Halprin, he wanted to defend himself. Judge Cieslik ordered two assistant public defenders to serve as defendant's advisers but warned defendant that all decisions, questions, arguments and objections had to be made by the defendant himself. Defendant said that he understood and desired to represent himself. On August 26, 1981, trial commenced with defendant proceeding *pro se*.

The right to counsel guaranteed by the sixth and fourteenth amendments of the Federal Constitution, by article I, section 8 of the Illinois Constitution, and by section 113—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1979, ch. 38, par. 113—3) includes the right to be represented by counsel of one's own choice. (*People v. Green* (1969), 42 Ill. 2d 555, 557, 248 N.E.2d 116.) Defendant contends that this right was violated here when the trial court removed Halprin as defendant's court-appointed attorney.

In the instant case, Judge Cieslik expressed the view that since Halprin was no longer serving as retained counsel but had been appointed by the court to represent defendant, he therefore had the authority to remove her for incompetence even over the objections of both Halprin and the defendant. To subscribe to this view would, in our judgment, give rise to an impermissible distinction between indigent and nonindigent defendants:

> "*** [W]e must consider whether a court-appointed counsel may be dismissed, over the defendant's objection, in circumstances in which a retained counsel could not be removed. A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. But the attorney-client relationship is not that elementary; it involves not just the [casual] assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the rela-

tionship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service. [Citation.] It follows that once counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused." *Smith v. Superior Court* (1968), 68 Cal. 2d 547, 561-62, 440 P.2d 65, 74, 68 Cal. Rptr. 1, 10. Accord, *McKinnon v. State* (Alaska 1974), 526 P.2d 18, 22; *Harling v. United States* (D.C. App. 1978), 387 A.2d 1101; *English v. State* (1969), 8 Md. App. 330, 336-37, 259 A.2d 822, 826.

We agree with the rationale of these cases and believe that for purposes of removal by the trial court, a court-appointed attorney may not be treated differently than privately retained counsel.

In the instant case, Judge Cieslik removed Halprin not, as the State has argued in its brief, as a sanction for contempt,[4] but because he concluded that she was inexperienced and could not competently conduct a defense.[5] "The defendant's constitutional right to counsel

---

[4]Although no appeal of the contempt citation is before us, we express our strong disapproval of tactics employed by any trial counsel that tend to impede or disrupt orderly court proceedings.

[5]Judge Cieslik removed Halprin *before* he determined what sanction he would impose on the contempt citation. After he fined her, he added, "*** and as I had indicated you will also be discharged of your duties and obligations to this defendant because it's the opinion of this court, for purposes of the record, that you are not competent enough and you do not have enough experience to properly conduct yourself and to give this defendant a proper defense in this case."

On August 25, 1981, Judge Cieslik informed defendant that he had removed Halprin because "*** her conduct was such that I felt you could not get a fair trial, ***." In urging defendant to accept the appointment of the public defender's office, the judge told defendant that if "I felt that either one of these gentlemen could not properly represent you, I would do the same thing I did with reference to Miss Halprin."

On August 26, 1981, Judge Cieslik stated: "I found her [Ms. Halprin] in contempt of this court and I excused her of her obligations because I felt you deserved better representation than she was giving you." "*** [Y]our case was *** of such a magnitude that you deserved something better."

In open court, Judge Cieslik explained to defendant's uncle on August 26, 1981, that "*** after I saw her in operation and I questioned her on how much experience she had with reference to this matter, it was my feeling, and I maintain that feeling, that she was not qualified to handle the defense of your nephew."

entitles him both to effective assistance by counsel and to counsel of his own choosing. Typically, both corollaries coexist symbiotically." (*People v. Johnson* (1979), 75 Ill. 2d 180, 185, 387 N.E.2d 688.) Here, however, where Judge Cieslik had determined that defendant's choice of counsel was not providing defendant with competent representation, one had to be sacrificed. The trial judge could not force the defendant to accept counsel other than counsel of defendant's own choosing. (*People v. Johnson* (1979), 75 Ill. 2d 180, 185.) Defendant's right to counsel of his own choice required that he be allowed to make a voluntary, knowing and understanding waiver of the right to competent counsel in order to receive the representation of his choice. *People v. Johnson* (1979), 75 Ill. 2d 180, 185-86.

In *Johnson*, the trial judge concluded that defendant's retained counsel was incompetent. The judge called both defendant and his attorney into chambers and, on the record, he advised defendant of the reasons why he believed defendant's counsel was incompetent; that defendant had a right to counsel of his own choice and, if defendant could not afford an attorney, to have one appointed for him by the court; that it was not feasible to call in standby counsel or assistant counsel; that defendant could continue with his present counsel but if he did, defendant would be deemed to have waived his right thereafter to assert incompetency of his counsel; and that if defendant wished to obtain new counsel, the judge would declare a mistrial so that defendant could obtain such new counsel. The trial judge then determined that defendant understood his rights and his alternatives. The defendant elected to proceed with his original attorney. The Illinois Supreme Court approved this procedure and held that defendant had voluntarily, knowingly and intelligently waived his right to competent counsel. *People v. Johnson* (1979), 75 Ill. 2d 180, 183-87.

In the instant case, had Judge Cieslik followed a procedure similar to that approved by the supreme court in *Johnson*, defendant could have made a voluntary, knowing and intelligent choice either to proceed with Halprin and waive the issue of competent counsel or to terminate his relationship with her and seek new counsel. Whatever choice defendant may have made, he could not thereafter reasonably have complained that he had been denied his constitutional right to the assistance of counsel. However, by virtue of the trial court's actions in this case, defendant was denied the opportunity of making this choice. Under these circumstances, we believe the court erred in removing Halprin as defendant's court-appointed coun-

sel.[6] Accordingly, we reverse defendant's convictions and remand the cause to the circuit court of Cook County for a new trial.

Reversed and remanded.

DOWNING, P.J., and HARTMAN, J., concur.

---

[6]The State's reliance on *People v. Lewis* (1981), 88 Ill. 2d 129, 160, 430 N.E.2d 1346, and *People v. Cox* (1961), 22 Ill. 2d 534, 537, 177 N.E.2d 211, for the proposition that an indigent defendant does not have an *unqualified* right to counsel of his own choice is misplaced. In each case, the supreme court rejected defendant's claim that he had the right to select the attorney to be appointed for him by the court. (*People v. Lewis* (1981), 88 Ill. 2d 129, 160-61; *People v. Cox* (1961), 22 Ill. 2d 534, 536-37.) That is not the right defendant asserts here. Defendant sought only to keep the attorney the court previously had appointed for him. In *Smith v. Superior Court* (1968), 68 Cal. 2d 547, 561-62, 440 P.2d 65, 74, 68 Cal. Rptr. 1, 10, the Supreme Court of California held that the "general principle that an indigent defendant who requests counsel must be satisfied with the court's selection and is not entitled to demand that a different counsel be appointed," was "obviously inapplicable" to the situation where the attorney who had been removed "was himself the counsel appointed by the court *** to represent [defendant] in these proceedings, and [defendant] is demanding not to change that appointment but only to enforce it."

*People v. Spurlark* (1978), 67 Ill. App. 3d 186, 384 N.E.2d 767, is likewise inapposite. In *Spurlark*, the appellate court held that the trial court was justified in appointing an attorney to represent defendant over defendant's objections where his retained attorney was continuously unavailable for trial for more than two years. (*People v. Spurlark* (1978), 67 Ill. App. 3d 186, 198.) Cases decided both before and after *Spurlark* have been concerned with a defendant using his right to counsel of his choice to avoid going to trial. (See *People v. Green* (1969), 42 Ill. 2d 555, 557, 248 N.E.2d 116; *People v. Washington* (1968), 41 Ill. 2d 16, 20, 241 N.E.2d 425; *People v. Guice* (1979), 83 Ill. App. 3d 914, 918, 404 N.E.2d 261, where the court found that defendant had no intention of obtaining counsel and was attempting to use her right to counsel "as a tactical device to prevent her case from ever being brought to trial.") None of these cases is applicable here.