**In re the CIVIL CONTEMPT PRO-CEEDINGS CONCERNING Michelle RICHARD.**

**No. 14733.**

Supreme Court of South Dakota.

Argued Nov. 27, 1984.

Decided Aug. 21, 1985.

**430**

Bruce Ellison, Rapid City, for Michelle Richard.

MORGAN, Justice (on reassignment).

Michelle Richard (Richard), who was incarcerated in the Pennington County Jail for civil contempt for refusal to testify before a grand jury, filed a petition in this court requesting issuance of a writ of mandamus or a writ of certiorari against Seventh Circuit Judge Jeff W. Davis (trial court), claiming that he had exceeded his authority by barring Bruce Ellison (Ellison) from any manner or form of contact with her. At the time, Ellison, who had apparently been previously appointed by the trial court to represent Richard and subsequently discharged by the trial court, was still representing her as volunteer counsel. This court determined that certiorari was the appropriate vehicle, issued an order to show cause why a writ should not be granted and directed both sides to submit briefs. We grant the writ of certiorari.

We summarize briefly the history of this case leading up to the trial court's actions. In April of 1982, Richard was charged with two counts of first-degree murder in connection with the shooting death of Conrad and Sylvia Wilson, father and daughter. Ellison was appointed counsel for Richard and represented her until the charges were

dismissed in May of 1983. In September of 1984, Richard was subpoenaed to testify before a Pennington County Grand Jury investigating the homicides. She requested the appointment of counsel, specifically Ellison, and the trial court complied although there is no order of record. The immediate issue at that point appeared to be the type of immunity the state's attorney would grant Richard.[1] Since the state's attorney would only agree to grant "use and derivative use" immunity, not "transactional" immunity, Ellison advised Richard not to testify. After one hearing before the trial court wherein she was instructed to testify, she nevertheless refused to do so:

MS. RICHARD: I still really don't understand the meaning of the immunity and I don't trust the State because I have been threatened so many times already with being charged with murder charges and accessory and being picked up, so I refuse to testify.

Richard was again taken before the trial court and the trial court adjudged her to be in contempt and ordered her incarceration until she decided to testify before the grand jury. At the time her incarceration began, Richard began a fast, refusing food but taking liquids, including juices.

At some point thereafter, which Richard alleged to be September 14, 1984, the trial court upon its own motion and over the objection of Richard, apparently removed the appointment of counsel for Ellison and substituted Rapid City attorney Allen Nelson (Nelson). It appears it was the trial court's intention to give Richard a second opinion regarding grants of immunity. We glean all this from the transcripts of a September 19, 1984, hearing because there is no written order of Nelson's appointment nor any written order of Ellison's removal. At this juncture, Richard also raised an additional reason regarding her refusal to testify. The then target of the grand jury investigation was Charles Swallow, whom Richard alleged was a first cousin which,

1. In the process of appointing Bruce Ellison to represent Michelle Richard, the trial court noted

in the record Ellison's knowledge and expertise on the subject of immunity.

according to Indian tradition, made him a brother. She claimed that according to Indian values and traditions she could not testify against her brother, therefore, she again refused to testify. The trial court denied her petition for release upon the grounds that she had not shown that incarceration would not persuade her to testify.

 About three weeks later, the incident occurred which ultimately triggered this proceeding. The jailer was informed by Ellison, after he had been visiting Richard, that she was going to refuse the liquids she had been receiving and go on a complete fast. The next day, October 12, 1984, after an *ex parte* meeting with the Pennington County Sheriff, the trial court convened a hearing which resulted in the trial court ordering Ellison barred from seeing Richard, speaking to her, or consulting with her. The grand jury subsequently indicted Swallow without Richard's testimony and Richard was released from incarceration. The matter, however, is not rendered moot by her release, since Richard's subpoena remains in effect as does the trial court's order barring her representation by or consultation with Ellison.

Prior to the return date, the trial court informed us by letter that it did not intend to attend the hearing on the show cause order unless this court deemed it necessary. It further stated:

My position is that the Writ of Mandamus and/or Certiorari demanded by Mr. Ellison is not proper in this instance. Recognizing that a Writ of Mandamus cannot be granted by default, I have chosen not to answer and thus confine the case to the papers of the applicant. Also recognizing that the scope of review on a Writ of Certiorari cannot be extended any further than to determine whether I have regularly pursued the authority of my court I chose (sic) to stand on that record.

I only wish to emphasize that the entire record in this matter presents the actions

that have taken place throughout these proceedings and not the limited references made by Mr. Ellison on his behalf in his brief.

By this reply, the trial court first tells us that the writ is not proper in this instance. It cites no authority for this proposition. Second, it tells us that it stands on the entire record as support for its action. The trial court apparently expects this court to search the record and brief its case. This is totally unacceptable. As a tribunal, we may not lend our offices to a respondent in order to formulate its argument and then sit in judgment on the merits of its cause.[2]

SDCL 21-31-1 provides: "A writ of certiorari may be granted by the Supreme and circuit Courts, when inferior courts ... have exceeded their jurisdiction, and there is no writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy."

 The right to counsel is a fundamental. right. *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); S.D. Const. art. VI, § 7. As this court stated in *State ex rel. Burns v. Erickson,* 80 S.D. 639, 645-46, 129 N.W.2d 712, 715 (1964):

In criminal actions South Dakota has long recognized an accused's constitutional and statutory guaranty of right to counsel, Article 6, Section 7, South Dakota Constitution, SDC 1960 Supp. 34.1901, SDC 1960 Supp. 34.3506, which in this state at least has been equally comprehensive to that accorded by the federal system. Consequently, the decision of the United States Supreme Court in 1963 extending this constitutional guaranty to state courts as one of the fundamental rights essential to due process under the Fourteenth Amendment, *Gideon v. Wainright,* [*supra*], is currently without impact on our criminal procedure.

**2.** These remarks are not intended to suggest that we consider the response of the trial court to be obdurate or contumacious. Rather, they reflect

the frustrating position that we are placed in as an appellate court, hearing only one side of the argument.

A grand jury witness' right to counsel is recognized in SDCL 23A–5–11.[3] Because the right to counsel is so fundamental under our criminal justice system, any trial court which interferes with that right under SDCL 23A–5–14[4] should clearly set out the basis for such action, specifying whether the attorney violated SDCL 23A–5–11 or unduly delayed or impeded the activity of the grand jury. No findings and conclusions are found in this record establishing any misconduct on Ellison's part. Indeed, the trial court did not even enter a written order for the record.

In *Save Centennial Valley Ass'n Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979), we defined our scope of review in certiorari: "When such courts, officers, boards or tribunals have jurisdiction over the subject matter and of the party, their action will be sustained unless in their proceedings they did some act forbidden by law or neglected to do some act required by law." (Citations omitted.) We refined this statement when we further quoted: "Certiorari will not as a rule lie to correct mere errors and irregularities in the exercise of jurisdiction by an inferior court or tribunal which had jurisdiction. It will not lie to review technical lack of compliance of law or be granted to correct insubstantial errors which are not shown to have resulted in prejudice or to have caused substantial injustice to the relator." *Id., citing* 14 Am.Jur.2d *Certiorari* § 10, p. 786. The issue then becomes whether the trial court, which had statutory authority to remove a grand jury witness' attorney when removal and replacement is necessary to ensure that the activi-

ties of a grand jury are not unduly delayed or impeded, was acting within the scope of that authority in this instance or whether the trial court committed substantial error which resulted in prejudice or caused substantial injustice to Richard.

■ "'Once counsel has been chosen, whether by the court or by the accused, the accused is entitled to the assistance of that counsel at trial.'" *Harling v. United States*, 387 A.2d 1101, 1105 (D.C.App.1978) (citation omitted). The *Harling* Court went on to recognize, however, that the right is not absolute, suggesting it is proper to remove counsel only in instances demanded by the interests of justice when the gross incompetence or physical incapacity of counsel, or contumacious conduct, cannot be cured by a citation for contempt. We recognize that Ellison was not representing Richard as defense counsel in a criminal action at the time of the trial court's action. We take note, however, that Richard had been originally charged with the murder. The record reflects her statement that she was continually being threatened by the state's attorney with further prosecution and he was unwilling to grant transactional immunity when she was subpoenaed to appear before the grand jury. By statute, she was entitled to representation by counsel and we see no reason to distinguish between the attorney/client relationship in this case and the *Harling* case. Furthermore, we note that in *Bottaro v. Hatton Associates*, 680 F.2d 895, 897 (2d Cir.1982), a security frauds case where the defendants sought to dis-

---

**3.** SDCL 23A–5–11 provides:

Prosecuting attorneys may at all times appear before the grand jury for the purpose of giving information or advice or interrogating witnesses relative to any matter cognizable by it. Prosecuting attorneys, the witness under examination and his counsel, interpreters when needed, and, for the purpose of taking the evidence when authorized by the grand jury, a stenographer or operator of a recording device may be present when the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting. The role of counsel appearing with a witness shall be limited to advising the witness. The

prosecuting attorney shall not be present during the consideration of any charge against himself, except that the grand jury may summon him as a witness.

**4.** SDCL 23A–5–14 provides:

The court shall have the power to remove a witness' attorney and order the witness to obtain new counsel, when it finds that the attorney has violated § 23A–5–11 or that such removal and replacement is necessary to ensure that the activities of a grand jury are not unduly delayed or impeded. Nothing in this section shall affect the power of the court to punish for contempt or impose other appropriate sanctions.

qualify plaintiff's counsel of choice from appearing to represent plaintiff, the Second Circuit panel stated: "... [L]itigants have a right to select their own counsel. While the right may not be absolute, it can be overridden only where compelling reasons exist."

There is nothing in the record that indicates to us that the trial court removed Ellison from representation for any of the reasons authorized in SDCL 23A–5–14. There is no doubt that the decision of Richard to go on a full fast was the precipitating factor.

■ On October 12, 1984, the trial judge called a hearing on his own motion. He first queried Richard as to whether the decision was her own. She stated that it was. She denied that Ellison had advised her to do it. The trial court then asked Ellison if he had advised Richard to go on the full fast, to which Ellison responded that his advice to his client was confidential but that "[i]t is not my decision. It is her own decision." Then Nelson was also questioned. He replied that he thought the fast was Richard's own decision. The trial court then called two jailers to testify. One jailer testified that it was Ellison who had told him that Richard was going to go on a complete fast and Ellison who suggested that she should be medically examined. Because of this testimony, the trial court decided to bar Ellison from further contact with Richard, purportedly to protect her health. The trial court granted a brief continuance and when the hearing reconvened that afternoon Richard again testified that Ellison had not advised her to fast, but that it was her decision. She testified:

I made this decision because I am tired of the racist attitude these people have in this state, and I can't make decisions—capable decisions by myself. I am completely competent in making my deci-

sions, and I have made this decision by myself, and these people don't seem to take me serious. I will never testify, and my traditional values will never be taken away from me. I continue on this fast because people don't seem to take me serious.

She also testified: "It would be preposterous for anybody who could think they could make a decision for me to go off water and food. I realize it will ultimately result in death." Richard further testified that she wanted Ellison to continue as her attorney. In addition, Nelson advised the trial court that Richard wanted Ellison as her attorney and suggested that she was entitled to be represented by him. Nevertheless, the trial court continued the order.[5]

■ In our opinion, the trial court erred in several respects. (1) It stated no reason for removal of Ellison as counsel that falls within the statutory authority for removal found in SDCL 23A–5–14. (2) The reason the trial court did state cannot be ascribed to the grounds for removal under the statute. The trial court had other means of protecting Richard's health than terminating the attorney/client relationship. As well intended as the trial court's concern may have been, and we give it credit for it, it clearly does not fall within the ambit of SDCL 23A–5–14. (3) Finally, the trial court's action far exceeds the statutory authority for removal of an attorney. Ellison was barred from representation of or *contact* with Richard. Although she has been freed from confinement and her fast had ended, she is still under the grand jury subpoena and the trial court's order remains in effect. By the wildest stretch of anyone's imagination, this action could not fall within the trial court's jurisdiction. We do not deem the trial court's action to be a mere error or irregularity in the exercise of the jurisdiction granted under SDCL 23A–5–14; rather, the trial court has far exceeded any authority granted by the stat-

---

5. Admittedly, neither Richard nor Ellison could be held in contempt of court for disobedience of the trial court's oral order. *Karras v. Gannon,* 345 N.W.2d 854 (S.D.1984). Nevertheless, we can appreciate that Ellison, being a member of the bar and an officer of the court, who undoubtedly had occasion to appear before the trial court often, would feel compelled to abide by the trial court's oral order.

ute and we grant judgment for a writ of certiorari and set aside the order of the trial court barring representation or contact between Richard and Ellison.

FOSHEIM, C.J., and WOLLMAN, J., concur.

HENDERSON, J., concurs specially.

WUEST, Circuit Judge, acting as a Supreme Court Justice, dissents.

HENDERSON, Justice (specially concurring).

In *Finck v. Finck*, 354 N.W.2d 198 (S.D. 1984), we recently ruled on an abuse of discretion concerning a trial court's refusal to permit an attorney to withdraw, holding that there was an abuse of discretion and citing the various Canons of Professional Conduct pertaining thereto. Here, we are confronted with the propriety of a trial court terminating an attorney-client relationship when both attorney and client object strenuously thereto. This case has a different dimension, for it comes before us on a writ of certiorari. There is a procedural nicety which we must address.

We must hurdle the procedural nicety before we partake of the substantive loaf. In reading the old cases in this Court, I glean that a writ of certiorari may be available only in those cases where an inferior tribunal has acted (1) without jurisdiction or (2) in excess of its jurisdiction, and (3) where there is no remedy by way of writ of error or appeal or other plain, speedy, and adequate remedy. *State ex rel. Grey v. Circuit Court of Minnehaha County*, 58 S.D. 152, 235 N.W. 509 (1931); *Willard v. Civil Service Bd. of Sioux Falls*, 75 S.D. 297, 63 N.W.2d 801 (1954). When the old cases discoursed on this extraordinary remedy in the Supreme Court, the "excess of jurisdiction" also came within the ambit of acts by a trial court which "failed regularly to pursue its authority." *Kirby v. Circuit Court of McCook County*, 10 S.D. 38, 71 N.W. 140 (1897). When some of the later cases recited the need that the writ could

not be granted if there was any other plain, speedy, and adequate remedy, the authority came from early statutory law, going back to C.Civ.P. 1877, § 685; C.L. 1887, § 5507; R.C.Civ.P. 1903, § 754; R.C. 1919, § 2996; SDC 1939 & Supp. 1960, § 37.0401, and which culminated in SDCL 21–31–1. In *Sioux Falls Nat'l Bank v. McKee*, 3 S.D. 1, 50 N.W. 1057 (1892), we held that the writ of certiorari should be resorted to only when necessary to save rights which would otherwise be lost. As one can read by this Court's decision in *Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452 (S.D.1979), this Court has not, in nearly one century, changed its basic position on the scope of review concerning the power to grant a writ of certiorari. We cling to the concept that we shall confine ourselves to the jurisdiction of inferior courts and whether such court (or officer, board, or tribunal) has regularly pursued the authority conferred upon them. Here, we are faced with a singular significant issue: not that the trial court had jurisdiction but whether it exceeded its jurisdiction; or, stated another way, whether it failed to regularly pursue its authority. Our predecessors, nearly a century ago, determined that this Court could decide whether a circuit court exceeded its jurisdiction or failed regularly to pursue its authority and it is the law today as it was the law in 1897.

Therefore, I conclude that this Court may grant a writ of certiorari, fashioning relief, in favor of the petitioner adjudging that the circuit court has substantively exceeded its jurisdiction or failed regularly to pursue its authority.

Relieving Mr. Ellison as counsel for Ms. Richard was improper and arbitrary as (1) it was based upon an ex parte meeting between the trial court and someone at the sheriff's office; (2) it did not encompass the consent of the client; (3) it not only prohibited representation by Ms. Richard's attorney but also prohibited contact with him; (4) it interrupted the continuity of the representation which the trial court recognized was very important[1]; and (5) it vio-

---

1. Concerning Mr. Ellison's prior court-appoint-

ment to represent Ms. Richard, the court ex-

lates the Sixth Amendment of the United States Constitution and Article VI, § 7, of the South Dakota Constitution prescribing the rights of the accused to defend by counsel. In my view, the trial court was acting within its jurisdiction but it exceeded its jurisdiction. It also failed to "regularly pursue its authority" all as set forth by the five criteria above listed.

The trial court's "grounds" to bar Ms. Richard's counsel of choice was upon a finding of "reasonable grounds to believe Mr. Ellison's further involvement in this case may in fact represent a danger to Ms. Richards [sic] ...." The trial court made this in-house disbarment without benefit of a hearing being accorded Ms. Richard and her counsel of choice, Mr. Ellison. Counsel was not removed for illness, incompetency, or negligence. It was because, in the mind of the court, he was a "danger" to his client. The client testified, or at least told the court, in Open Court, that "nobody has told me to go off liquids. It was my decision to do so." When asked by the trial court if she had been threatened or coerced, she responded as follows: "Absolutely not. It would be preposterous for anybody who could think they could make a decision for me to go off water and food."

Applying the facts of this case to the settled law of this Nation, I simply cannot come to any other conclusion than the termination of the attorney-client relationship was arbitrary and that, thereby, the lower tribunal exceeded its jurisdiction. In *Harling v. United States*, 387 A.2d 1101, 1106 (D.C.App.1978), the District of Columbia Court of Appeals recognized that after counsel has been appointed, an attorney-client relationship has been established and that relationship "is no less inviolable than if counsel had been retained." In *Harling*, 387 A.2d at 1104, the judge had indicated "Well, I'm satisfied he needs another lawyer." (Emphasis omitted.) However, the trial judge was reversed in his decision in this regard. In effect, the trial judge here

said the same thing. The general body of law is not supportive of the trial judge's decision, but is, rather, opposed to it. A court-appointed attorney cannot be arbitrarily removed over the objections of the attorney and his client once the attorney-client relationship has been established. *See McKinnon v. State*, 526 P.2d 18 (Alaska 1974); *Smith v. Superior Court of Los Angeles County*, 68 Cal.2d 547, 440 P.2d 65, 68 Cal.Rptr. 1 (1968) (en banc); *Harling v. United States*, 387 A.2d 1101; *People v. Davis*, 114 Ill.App.3d 537, 542, 70 Ill.Dec. 363, 367, 449 N.E.2d 237, 241 (1983); *English v. State*, 8 Md.App. 330, 259 A.2d 822 (1969); *People v. Fox*, 97 Mich.App. 324, 331, 293 N.W.2d 814, 818 (1980) (Cavanagh, Presiding Judge, dissenting), *rev'd*, 410 Mich. 871, 299 N.W.2d 912 (1980). However, in *United States v. Dinitz*, 538 F.2d 1214, *reh'g denied*, 542 F.2d 1174 (5th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977), it was recognized that courts traditionally had the discretion to determine who practiced before them and to monitor their conduct. The Fifth Circuit Court of Appeals expressed: "Since attorneys are officers of the courts before which they appear, such courts are necessarily vested with the authority, within certain limits, to control attorneys' conduct." *Dinitz*, 538 F.2d at 1219. Again, in *Dinitz, id.*, the Court reflected that the trial court's refusal to hear the defendant through his chosen counsel, either constituted an abuse of discretion, or did not, upon a case-by-case basis. Therefore, that portion of Acting Justice Wuest's dissent which expresses that trial courts have inherent powers and responsibilities in the administration of justice, and particularly when we address this subject of who shall practice before the courts, rings with reason. In my view, the removal of counsel from his client is an extremely serious sanction and should be employed by a trial

---

pressed: "I think it's sufficient from the past record and Ms. Richards' [sic] statements today, to find that appointment of counsel would be proper in this case, given the conflict, also given

your prior involvements, Mr. Ellison. I think it's important that continuity be maintained. I have no problem at all in appointing you in representing Ms. Richards [sic]."

court only in rare instances, after hearing, and the entering of written findings.

In addition to those reasons earlier expressed as to why the action of the trial court exceeded its jurisdiction and failed to regularly pursue its authority, I join the general expressions of the majority opinion that there are no findings of fact before us and that, under these circumstances, findings should have been entered to justify such an extreme and unusual action by the trial court. When Mr. Ellison, as Ms. Richard's counsel, took this appeal, the final request was that "this court ... restrain the Honorable Jeff Davis from prohibiting representation by and consultation with Bruce Ellison, her attorney of choice during, the pendancy [sic] of her Grand Jury subpoena." This was dated November 15, 1984, and the brief was filed November 19, 1984. The dilemma faced by the attorney and client was, at that time, very real and crucial. Ultimately, the fast ended because the Grand Jury was dismissed and Ms. Richard was released. The order continued, and continues, to forbid this attorney from representing his client or contacting her. Therefore, the issue is still very crucial and real. There is no other writ of error or appeal available to petitioner. Moreover, the order appointing and the order terminating Mr. Ellison was never reduced to writing. Yet, judicial power exists, is in force, and continues to preclude an attorney from contacting his client. We owe a duty to rule foursquare on the propriety of the application of judicial power in jeopardizing and severing an attorney-client relationship, not only to determine the excessive jurisdiction of the trial court's decision in this case, but to establish a legal principle which would be binding in future cases and to give guidance to the Bar and Bench. *Finck v. Finck*, 354 N.W.2d 198, and the case at bar should serve as a reservoir of research and reflection. Thus, I would grant the writ of certiorari.[2]

WUEST, Acting Justice (dissenting).

I dissent.

Criticism of the trial court for failing to hire a lawyer and defend himself is not justified. A writ of certiorari commands the party to whom it is directed to furnish a transcript of the record and proceedings so they may be reviewed by the court. SDCL 21-31-4. When a full return has been made, the court must hear the parties, or such of them as may attend for that purpose, and may thereupon give judgment either affirming or annulling or modifying the proceedings below. SDCL 21-31-7.

In this case, no written order was entered appointing Mr. Ellison, nor was there any written order barring him from any further representation or contact of Ms. Richard. There was a ruling from the bench [*] but no order. SDCL 15-26A-7 provides that the Supreme Court may review a ruling or determination of the trial court "on *appeal* from a *judgment*." (Emphasis supplied.) This statute has no application to the instant action, however, because there was no appeal nor was there a judgment entered. If counsel wished to make a record, findings of fact should have been presented and a written order entered. This is not a case where the exigencies of the moment preclude the entry and service of a written order as discussed in *Karras v. Gannon*, 345 N.W.2d 854 (S.D.1984). Rather, *Karras* holds a written order

---

2. Although the trial court was ordered to certify the record and both parties were to file briefs, the trial court relied upon certifying the record under SDCL ch. 21-31.

* On October 12, 1984, the trial court stated: I can find reasonable grounds to believe Mr. Ellison's further involvement in this case may in fact represent a danger to Ms. Richard ... I am taking this opportunity upon the record that is present in this particular matter to bar Mr. Ellison from any further representation or contact of Ms. Richard.

Later that day, when asked to reconsider, the trial court stated:

As it relates to the decision this morning, Mr. Ellison's assertion that my actions are based on assumptions, I think the records establishing circumstances which the court cannot ignore, and are not merely assumptions on my part, the order barring Mr. Ellison is still in force and effect and will continue to remain so.

should have been entered under the facts of the present case. Perhaps the trial court may have reconsidered had the record been completed. In the absence of an order, there is nothing for the court to review. As to this, SDCL 15–6–58 provides that "an order becomes complete and effective when reduced to writing, signed by the court or judge, attested to by the clerk and filed in his office." We delineated the rationale for this requirement early on in the case of *Union Sav. Ass'n v. Somers*, 40 S.D. 177, 166 N.W. 638 (1918), stating:

> The reason for the rule requiring that an order be entered of record in some form before it becomes effectual as an order is that there shall be no uncertainty as to the existence and exact purport of such order, and that there be some reliable and available means of determining its existence and purport. An order, under our statute as it exists at this time, is deemed to be entered when formally prepared, signed by the court or judge, attested by the clerk, and filed in his office. Until all these things have been done it is not an effective order.

40 S.D. at 179–80, 166 N.W.2d at 638. *See also Estate of Hofer*, 90 S.D. 140, 238 N.W.2d 496 (1976); *Foss v. Spitznagel*, 77 S.D. 633, 97 N.W.2d 856 (1959); *Stephens v. Faus*, 20 S.D. 367, 106 N.W. 56 (1906). The writ of certiorari is similar to the writ of error, in that it will not lie where the matter is undisposed of by the lower court and nothing in the nature of a final order or adjudication has been entered. *Territory v. District Court*, 4 Dak. 308, 30 N.W. 145 (1886).

Assuming the decision of the trial court is construed as an order, certiorari is not the proper remedy. The majority seeks to buttress their lack of jurisdiction theory upon the proposition that SDCL 23A–5–14 provides the only grounds for removal of a grand jury witness' attorney. First of all, the terminology providing for removal "to ensure that the activities of a grand jury are not unduly delayed or impeded" is broad enough to cover a multitude of situations, including a fast to avoid incarceration employed to coerce testimony before a grand jury. Nonetheless, the court should not be restricted to the broad terminology of the statute. Should grossly incompetent counsel be permitted to proceed as long as the activities of the grand jury are not delayed or impeded? As to this, trial courts have many inherent powers and responsibilities in the administration of justice, and not just those enumerated in a statute as the majority seems to hold. The trial court did conduct a hearing in which evidence was presented upon which it issued a ruling.

SDCL 21–31–8 provides: "The review upon writ of certiorari cannot be extended further than to determine whether the inferior court ... has regularly pursued the authority of such court[.]"

> When such courts, officers, boards or tribunals have jurisdiction over the subject matter and of the party, their action will be sustained unless in their proceedings they did some act forbidden by law or neglected to do some act required by law. *State v. State Board of Assessment and Equalization*, 3 S.D. 338, 53 N.W. 192 (1892). Under certiorari we will not consider matters outside the record. *State v. Costello*, 36 S.D. 76, 153 N.W. 910 (1915).

*Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979). *See State v. Tschetter*, 337 N.W.2d 829 (S.D.1983).

> It seems quite elementary that the jurisdiction of a court is not destroyed by making a finding of fact contrary to the clear preponderance of the evidence. Such errors, if they exist, cannot destroy jurisdiction, and therefore certiorari is not the remedy to determine whether or not they do exist. Unless by virtue of special and express statutory provision, certiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding, at least in the absence of fraud, or willful and arbitrary disregard of undisputed and indisputable proof wherein credibility of witnesses is not involved. *National, etc., Co. v. Hirning*, 40 S.D. 448, 167 N.W. 1055;

438

*Austin v. Eddy,* 41 S.D. 640, at page 648, 172 N.W. 517; *Southwest Branch, etc., v. Dakota Central Telephone Co.,* 53 S.D. 121, 220 N.W. 475.

*State v. Circuit Court of Minnehaha County,* 58 S.D. 152, 158, 235 N.W. 509, 511 (1931).

A court has power to remove a grand jury witness' attorney and order the witness to obtain a new counsel when it finds that such removal and replacement is necessary to ensure that the activities of the grand jury are not unduly delayed or impeded. SDCL 23A–5–14.

The trial court believed Ellison was orchestrating the fast to secure petitioner's release from jail, and thereby avoid the court's order that she testify.

A trial judge may "in the interest of justice" substitute one counsel for another. D.C.Code 1977 Supp., § 11–2603. Gross incompetence or physical incapacity of counsel, or contumacious conduct that cannot be cured by a citation for contempt may justify the court's removal of an attorney, even over the defendant's objection. See, e.g. *United States v. Dinitz,* [538 F.2d 1214, 1219 (5th Cir. 1976).]

*Harling v. United States,* 387 A.2d 1101, 1105 (D.C.1978); *see also Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); 3 A.L.R.4th 1218 (1981).

Once an attorney has been chosen by the trial court or the accused, and an attorney/client relationship has been established, the court may not *arbitrarily* remove the attorney over the objections of both the defendant and his counsel. *English v. State,* 8 Md.App. 330, 259 A.2d 822 (1969); *McKinnon v. State,* 526 P.2d 18 (Alaska 1974); *Smith v. Superior Court of Los Angeles County,* 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65 (1968) (en banc).

While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice.

*In re McConnell,* 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434, 438–39 (1962).

In my opinion, the trial court erred, but certiorari should not be granted.